BEA, Circuit Judge,
dissenting from the denial of rehearing en banc,
joined by KOZINSKI, Chief Judge, and O’SCANNLAIN, GOULD, TALLMAN, CALLAHAN, IKUTA, and N.R. SMITH, Circuit Judges:
The panel majority — over a vigorous dissent by Chief Judge Restani of the Court *846 of International Trade — extends and grants a Bivens[1] claim to a prisoner against private company prison guards who are unprotected by notions of qualified immunity, available only to government employees.[2] It does so for personal injury claims between California litigants, for acts and omissions which took place in California, and for which California tort law provides adequate remedies through compensatory and punitive damages. In doing so, the panel majority frankly admits its opinion creates an irreconcilable conflict with the decisions of two federal circuits, the Fourth and Eleventh.[3] Further, it disregards the Supreme Court’s narrowing instructions on Bivens, which have limited recognition of new Bivens actions to those situations where, for one reason or another, damages were unavailable under both state and federal law. Because such an unprecedented opinion demands further review, I respectfully dissent from the denial of rehearing en banc.
I. The panel majority erred in unjustifiably recognizing a new Bivens action where adequate, and arguably superior, state remedies exist.
In its forty-year Bivens history, the Supreme Court has never provided a Bivens claim for relief to a person who — like the plaintiff in this case, Richard Lee Pollard — had adequate state tort remedies.[4] In its most recent consideration of whether to extend Bivens, the Court distilled four decades of jurisprudence into a two-part test:
[T]he decision whether to recognize a Bivens remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a Bivens remedy is a subject of judgment: the federal courts must make *847 the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation.
Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (emphasis added) (citation and internal quotation marks omitted).
A look at the three cases in which the Supreme Court has allowed a Bivens recovery reveals the emphasis the Court, and in turn, our sister circuits, have placed on the requirement that there be a lack of alternative state common law or statutory remedies. The Court has recognized two, and only two, contexts that permit recovery under Bivens: “to provide an otherwise nonexistent cause of action against individual [federal] officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual [federal] officer’s unconstitutional conduct.” Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). Neither circumstance is present in this case.
In Bivens, the Court created an implied cause of action for the homeowner for a warrantless, but consensual, entry and a nonconsensual search of his apartment, in violation of his Fourth Amendment rights. The drug agents’ alleged conduct was egregious; they manacled the plaintiff in front of his wife and children, searched his entire apartment, and threatened to arrest his entire family. Bivens, 403 U.S. at 389, 91 S.Ct. 1999. However, the Court noted that, since Bivens consented to the federal agents entering his home, his act precluded a state tort claim for trespass. Id. at 394, 91 S.Ct. 1999. Thus, absent a right of action implied by the Court from the Constitution, Bivens would have had no means by which to vindicate his Fourth Amendment rights against unreasonable searches and seizures by recovery of damages, and through recovery of damages to deter the individual officers from engaging in such egregious conduct in the future.[5]
Next, in Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court created an implied cause of action under the Fifth Amendment for a female office worker who alleged gender discrimination while working for Congressman Otto Passman of Louisiana. The Court noted that the plaintiff had no cause of action under Louisiana law for gender discrimination, and because the defendant was no longer in office, injunctive relief against the ex-Congressman would have been futile. Id. at 245, 99 S.Ct. 2264. Given the need for “an otherwise nonexistent cause of action,” Malesko, 534 U.S. at 70, 122 S.Ct. 515, the Court created an implied cause of action for monetary relief. Davis, 442 U.S. at 248, 99 S.Ct. 2264.
The last, and most recent, application of Bivens liability before the Court occurred thirty years ago in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In Carlson, the administratrix of the estate of a deceased federal prisoner brought an action alleging that prison officials had violated the prisoner’s Eighth Amendment rights by exhibiting deliberate indifference to the prisoner’s serious medical needs — precisely the claims made here by Pollard. The prisoner was alleged to have died as a result. Under Indiana’s tort law, the prisoner’s cause of action for his pain and suffering did not survive his death. Hence, the administratrix had no legally protected interest to be harmed, and thus, no standing to sue on behalf of decedent’s estate. In light of the deter *848 rence rationale in Bivens, the Court found an implied cause of action, which provided the only avenue to vindicate the decedent’s rights to damages against the individual tortfeasors.[6] Id. at 23, 100 S.Ct. 1468.
The facts of these cases show how marked a departure is the panel majority’s opinion from established precedent.[7] Unlike Bivens, Davis, and Carlson, where the plaintiffs had no existing cause of action and no alternative state remedy, Pollard has a viable suit in state court against each of the jailor defendants under theories of intentional or negligent tort or medical malpractice. California law imposes an affirmative duty of care on jailers:
One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of his normal opportunities for protection is under ... a duty to take reasonable action to protect them against unreasonable risk of physical harm.
Rest. (2d) Torts § 314A, see also Delgado v. Trax Bar & Grill, 36 Cal.4th 224, 30 Cal.Rptr.3d 145, 113 P.3d 1159, 1165 n. 14 (2005) (citing provision with approval).
To recover compensatory damages under California law, Pollard need prove only the individual defendants breached this affirmative duty, and that the breach caused him physical or emotional harm. Additionally, punitive damages are available in an ordinary negligence or medical malpractice action where plaintiff proves defendant acted with “malice” or “extreme indifference to the plaintiffs rights.” Flyer’s Body Shop Profit Sharing Plan v. Ticor Title Ins. Co., 185 Cal.App.3d 1149, 230 Cal.Rptr. 276, 278-79 (1986).
In at least one respect, Pollard’s remedy under state law against both jailers and doctors is actually superior to any presumed action he would have under Bivens. A Bivens plaintiff must prove the defendants acted with “deliberate indifference.” Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). But, in a negligence claim, a plaintiff need establish only that the jailers breached their affirmative duty of providing reasonable care. Thus, unlike the few cases in which the Court has recognized a Bivens action, Pollard already has a state forum in which to remedy the alleged unconstitutional conduct — with a lesser showing of culpability required, no less. Bivens claims were created for the situation in which the plaintiff had no other means of vindicating his constitutional rights in either state or federal court; that policy concern simply does not apply to a case, such as here, where adequate state tort remedies exist.
The panel majority invokes the abstract claim of “lack of uniformity” as a reason to support its assertion that the existence of state tort remedies cannot, on its own, preclude recognition of a new Bivens action. But “lack of uniformity” has been a significant part of the Court’s analysis only when the plaintiff has shown that he is barred from bringing suit for the alleged constitutional violation in one or more *849 statgjj. In Carlson, the plaintiff could not bring her claim because Indiana’s survivorship law did not provide her standing to sue for violations of her husband’s rights. Because other states allowed survivor claims, there was no actual uniformity unless the Court created a federal cause of action. Carlson, 446 U.S. at 25, 100 S.Ct. 1468. In Bivens, lack of uniformity — mentioned explicitly only in Justice Harlan’s concurrence — was relevant only because the plaintiff had showed that, since he had consented to the agents’ entrance into his apartment, he had no cause of action under state law. Bivens, 403 U.S. at 394, 91 S.Ct. 1999. Davis did not even address the lack of uniformity claim because the case dealt with the quintessential Bivens scenario: there was no existing cause of action, under either federal statutory or state law, for the alleged constitutional violation.
Qualms about “lack of uniformity” are irrelevant where, as here, the plaintiff has an adequate, and arguably superior, tort claim under state law. The plaintiff has not shown — because he cannot — that there is any state which does not provide recovery for that most fundamental tort claim, in which one person’s negligent conduct causes physical and/or emotional harm to another. Perhaps the states, as “laboratories of democracy,” Landell v. Sorrell, 406 F.3d 159, 178 (2d Cir.2005) (Jacobs, J., dissenting from the denial of rehearing en banc), have adopted slightly different recovery caps or procedural rules, but the essence of the negligent tort claim existed as trespass on the case at common law when the forms of action were in full bloom, and exists today in all fifty states. As such, the panel’s lack of uniformity preoccupation is as imagined as is any legal support for its assertion that state law remedies cannot, on their own, preclude recognition of a Bivens action.
II. The panel majority creates an irreconcilable circuit split with the Fourth and Eleventh Circuits, which correctly held that Bivens does not apply where adequate state remedies exist.
The panel majority’s decision, by its own admission, creates a circuit split with the two courts of appeals which held, on indistinguishable facts, that alternative state remedies are sufficient, on their own, to preclude recognition of a new Bivens claim. In Alba v. Montford, 517 F.3d 1249 (11th Cir.2008), the Eleventh Circuit refused to recognize a Bivens action brought by a federal prisoner incarcerated in a privately-operated correctional facility against prison employees for deliberate indifference to his medical needs in violation of the Eighth Amendment. The court affirmed the district court’s 12(b)(6) dismissal on the ground that alternative remedies (state law negligence and medical malpractice claims) existed by which the prisoner could recover from the employees. Id. at 1254.
In Holly v. Scott, 434 F.3d 287 (4th Cir.2006), the Fourth Circuit refused to recognize a Bivens action for a federal prisoner suing individual employees of a privately-operated prison — the very company which is a defendant-appellant here — for alleged violation of his Eighth Amendment rights in failing to provide him with adequate medical care for his diabetes. The Fourth Circuit held that Bivens did not recognize an implied right of action for an inmate who had an adequate, and arguably superior, remedy under the state law of negligence.[8] Id. at 295.
*850 The facts of Alba and Holly are so similar to this case that the panel majority does not even try to distinguish them. These cases dealt with federal prisoners held in privately-run prisons, who alleged violations of the Eighth Amendment because of inadequate medical care, brought suit against the individual employees, and had alternative state tort claims (under negligence and medical malpractice) under which they could recover. Commendably, the panel majority simply admits that its holding with regard to alternative remedies “conflicts with both Holly and the Eleventh Circuit’s holding in Alba.” Pollard v. The GEO Group, Inc., 607 F.3d 583, 588 (9th Cir.2010).[9] The panel’s explanation for this disagreement reduces to a policy judgment that plaintiffs in this situation should have another forum in which to pursue these claims even though an adequate state remedy exists. Whatever may be the merits of that policy judgment, it is for Congress, not for us, to make.
III. Conclusion
For the first time in this country’s history, this court has created a “freestanding” federal cause of action against private company employees where adequate, and arguably superior, state remedies are available. As the panel majority contends, it is conceivable that there could be some constitutional violations for which there are no existing, alternative remedies under state tort law. If Bivens has any remaining vitality, those are the types of cases to which it was meant to apply. But 1^is is demonstrably not one of those cases. Pollard has adequate, alternative state remedies through which he can vindicate his constitutional rights. By recognizing an implied cause of action in this instance, the panel extends Bivens far beyond its carefully prescribed contours and places this circuit in direct conflict with each of the other circuits to address the issue. To my mind, such a remarkable opinion merited a second look en banc. I must dissent.
OPINION
PAEZ, Circuit Judge:
Plaintiff-Appellant Richard Lee Pollard, a federal inmate, appeals the district court’s order dismissing his Eighth Amendment claims against employees of a private corporation operating a federal prison under contract with the Bureau of Prisons.[1] This appeal presents the question of whether the implied damages action first recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), allows a federal prisoner to recover for violations of his constitutional rights by employees of private corporations operating federal prisons. We conclude that it does.
I. BACKGROUND
The GEO Group, Inc. (GEO), under contract with the federal Bureau of Prisons (BOP), has operated the Taft Correctional Institution (TCI) since December 1997.[2] *851 Pollard is a federal inmate who, in 2001 and 2002, was incarcerated at TCI. During his imprisonment, Pollard slipped on a cart left in a doorway and had to be seen by the prison’s medical staff.[3] He was x-rayed, diagnosed with possible fractures of both elbows, and placed in a bilateral sling. He was then referred to an orthopedic clinic outside the prison.
Before transporting Pollard to the clinic, a GEO employee directed him to don a jumpsuit. Pollard told the employee that putting his arms through the sleeves of the jumpsuit would cause him excruciating pain, but he was nonetheless required to put it on. Two employees also forced Pollard to wear a “black box” mechanical restraint device on his wrists despite Pollard’s complaints about severe pain. An outside orthopedist diagnosed Pollard with serious injuries to his elbows and recommended that his left elbow be put into a posterior splint for approximately two weeks. Upon returning to TCI, Pollard was told that, due to limitations in staffing and facilities, his elbow would not be put into a posterior splint. Pollard claims that, in the following weeks, he was unable to feed or bathe himself and that the GEO employees failed to make alternative arrangements for him. He further alleges that he was required to return to work before his injuries had healed and was again forced to wear the “black box” restraint when returning to the outside orthopedic clinic for a follow-up appointment.
Pollard subsequently filed a pro se complaint in the United States District Court for the Eastern District of California, alleging violations of his Eighth Amendment rights and seeking money damages under Bivens. His first amended complaint named GEO and eight individuals as defendants. Seven of these individuals were employees of GEO at the time of Pollard’s injuries.[4] The eighth, Marshall Lewis, was a doctor employed by the Pacific Orthopedic Medical Group, which GEO had hired to treat Pollard. GEO was subsequently dismissed from the suit due to the Supreme Court’s holding in Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), that private prison corporations are not subject to Bivens liability. See Order Dismissing Complaint With Leave to Amend at 2, Pollard v. Wackenhut, No. CV-F-01-6078 ’(E.D.Cal. Mar. 7, 2002).[5]
Pollard’s suit against the remaining defendants was assigned to a magistrate judge for screening pursuant to 28 U.S.C. § 1915A(a). The Magistrate Judge issued proposed findings and a recommendation that Pollard’s suit be dismissed under 28 U.S.C. § 1915A(b)(l) for failure to state a claim. Specifically, the Magistrate Judge *852 concluded that a Bivens cause of action was not available to Pollard for two reasons: (1) state law provided him with alternative remedies for his injuries in the form of a tort action for negligence or medical malpractice; and (2) although under contract with the federal government, the GEO employees did not act under color of federal law. Pollard did not file objections to the Magistrate Judge’s recommendation, and the district court adopted it in full and dismissed Pollard’s complaint.
Shortly thereafter, Pollard, now represented by counsel, filed a motion to vacate the judgment. That motion requested that the dismissal be vacated for the limited purpose of allowing Pollard to assert objections to the Magistrate Judge’s findings and recommendation, thereby preserving his right to appeal. The district court did not rule on the motion. Pollard ultimately filed a timely notice of appeal, which was served on the Acting Executive Assistant at TCI, but not on any of the individually named defendants personally. Before this court, only five of the original eight individual defendants filed an opposition brief.[6]
We review de novo a district court’s grant of a motion to dismiss under 28 U.S.C. § 1915A. Resnick, 213 F.3d at 447.
II. PROCEDURAL CHALLENGES
The GEO employees initially argue that we should dismiss this appeal because: (1) they were never served with Pollard’s opening brief and (2) Pollard failed to enter objections to the Magistrate Judge’s findings and recommendation and thereby forfeited his right to appeal. We are not convinced by either of these arguments, which we address in turn.
First, the GEO employees argue that because they were not served with a copy of Pollard’s opening brief, this court lacks jurisdiction over this appeal.[7] Fed. R.App. Proc. 25(b) provides: “Unless a rule requires service by the clerk, a party must, at or before the time of filing a paper, serve a copy on the other parties to the appeal or review. Service on a party represented by counsel must be made on the party’s counsel.” It is undisputed that Pollard only served his opening brief on Dale Patrick, identified as the Acting Executive Assistant for TCI.
Fed. R.App. P. 3(a)(2) provides that “[a]n appellant’s failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal.” See Azizian v. Federated Dep’t Stores, 499 F.3d 950, 961 (9th Cir.2007) (noting, in the context of a violation of Fed. R.App. P. 7, that Fed. R.App. P. 3(a)(2) grants to this court’s “sound discretion” whether to dismiss an appeal). In deciding whether such a deficiency warrants dismissal, we are entitled to consider whether Pollard’s failure resulted in prejudice to the GEO employees or to this court. See Everest & Jennings, Inc. v. E & J Mfg. Co., 263 F.2d 254, 262 (9th Cir.1959) (holding that, because the opposing party could demonstrate no prejudice, a failure to file briefs *853 in accordance with court rules did not warrant dismissal); Recinos De Leon v. Gonzales, 400 F.3d 821, 822 (9th Cir.2005) (published order) (considering prejudice to the opposing party and to the court in deciding whether to dismiss an appeal based on the late filing of a brief).
The GEO employees have not alleged — nor can we surmise — any prejudice resulting from Pollard’s failure to comply strictly with the requirements of Rule 25(b). Pollard’s counsel has provided the court with an affidavit (and accompanying telephone records) declaring that he contacted GEO and was specifically instructed by a representative of GEO’s General Counsel to send legal correspondence to TCI. We have no reason to doubt that Pollard’s counsel was so instructed, as the same law firm represents GEO and the individually named defendants on appeal. Indeed, the appellees’ answering brief was filed on behalf of all those parties (other than the physician not employed by GEO, Marshall Lewis).[8] Thus, we exercise our discretion under Fed. R.App. P. 3(a)(2) and decline to dismiss this appeal for this alleged deficiency.
Second, the GEO employees argue that dismissal is warranted because Pollard failed to file timely objections to the Magistrate Judge’s findings and recommendation. The GEO employees contend that the failure to file objections constitutes a waiver of Pollard’s right to appeal. But this court has held that such a failure does not, “standing alone, ordinarily constitute a waiver of the [appeal].” Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir.1991) (citing Britt v. Simi Valley Unified Sch. Dist, 708 F.2d 452, 454 (9th Cir.1983)). Rather, Martinez counsels that failure to object to a magistrate judge’s findings and recommendations “is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal.” Id. Because Pollard was proceeding pro se at the time of the alleged waiver, and because the GEO employees have demonstrated no prejudice resulting from Pollard’s failure to file objections, we decline to exercise our discretionary authority to dismiss this appeal.
III. DISCUSSION
We turn to the merits of this appeal. The district court dismissed Pollard’s suit pursuant to 28 U.S.C. § 1915A(b)(l) for failure to state a claim.[9] Specifically, the Magistrate Judge’s findings and recommendation concluded that a Bivens action was not available to Pollard because: (1) the GEO employees do not act under color of federal law; and (2) Pollard could pursue a claim for damages against the GEO employees under state tort law. We address these issues in turn and conclude that (1) the GEO employees act under color of federal law for purposes of Bivens liability and (2) the availability of a state tort remedy does not foreclose Pollard’s ability to seek redress under Bivens. We recognize that the former holding directly conflicts with the Fourth Circuit’s holding in Holly v. Scott, 434 F.3d 287, 294 (4th Cir.2006), and the latter conflicts with both *854 Holly and the Eleventh Circuit’s holding in Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir.2008).[10] We discuss our disagreement with our sister circuits infra.
1. Federal Action
In Bivens, the Supreme Court recognized an implied cause of action under the Fourth Amendment for injury caused “by a federal agent acting under color of his authority....” 403 U.S. at 389, 91 S.Ct. 1999. It is widely accepted that Bivens provides a cause of action only against an official “acting under color of federal law.” See, e.g., Morgan v. United States, 323 F.3d 776, 780 (9th Cir.2003) (“Morgan’s Complaint sufficiently sets forth the elements of a Bivens claim by alleging a violation of his constitutional rights by agents acting under the color of federal law.”). Thus, the threshold question presented here is whether the GEO employees can be considered federal agents acting under color of federal law in their professional capacities. We conclude that they can.
We note at the outset that the one federal court of appeal to have directly addressed the question — the Fourth Circuit — has held that employees of private corporations operating federal prisons are not federal actors for purposes of Bivens. Holly, 434 F.3d at 294. See also Alba, 517 F.3d at 1254 (assuming, without deciding, that a privately operated prison is a government actor for purposes of Bivens liability). In Holly, as in this case, the defendants were employees of GEO, which the Fourth Circuit described as “a wholly private corporation in which the federal government has no stake other than a contractual relationship.” 434 F.3d at 291. Reasoning that “[application of Bivens to private individuals simply does not find legislative sanction,” the Holly majority held that the GEO employees were not federal actors for purposes of Bivens. Id. at 292-94.
Neither the Supreme Court nor our court has squarely addressed whether employees of a private corporation operating a prison under contract with the federal government act under color of federal law. That said, we have held that private defendants can be sued under Bivens if they engage in federal action. Schowengerdt v. Gen. Dynamics Corp., 823 F.2d 1328, 1337-38 (9th Cir.1987) (citing Ginn v. Mathews, 533 F.2d 477 (9th Cir.1976), abrogated on other grounds by Rendell-Baker v. Kohn, 457 U.S. 830, 838-43, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)); see also Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1104 (9th Cir.2004) (“[T]o the extent that [Plaintiff] sought recovery from individual employees of the [private corporation managing the federal prison], the case had to [be] brought as a Bivens action.”). In determining whether a private individu *855 al has engaged in federal action, we have looked to “state action” principles developed by the Supreme Court in suits brought under 42 U.S.C. § 1983. See Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir.1997) (“[W]e apply similar tests to determine whether federal action exists to support a Bivens claim or to determine whether State action will permit a § 1983 cause of action.”); Mathis v. Pac. Gas & Elec. Co., 891 F.2d 1429, 1432 n. 3 (9th Cir.1989) (“The standards for determining whether an action is governmental are the same whether the purported nexus is to the state or to the federal government.”); see also Schowengerdt, 823 F.2d at 1339 n. 17 (suggesting the use of § 1983 state action tests to identify federal action in the Bivens context).
Other circuits have also recognized the similarity of the § 1983 and Bivens doctrines. See Williams v. Hill, 74 F.3d 1339, 1340 (D.C.Cir.1996) (per curiam) (noting that bodies of law relating to § 1983 and Bivens actions have been assimilated in most respects); Chin v. Bowen, 833 F.2d 21, 24 (2d Cir.1987) (“Though the two actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into Bivens suits.” (footnote and internal quotations omitted)); Morast v. Lance, 807 F.2d 926, 931 (11th Cir.1987) (“[T]he concept of action under color of federal law for purposes of a Bivens action is almost identical to the doctrine of action under color of state law for purposes of a § 1983 action .... ”). Indeed, even the Supreme Court has recognized a connection between the two doctrines, although at a high level of abstraction. See Hartman v. Moore, 547 U.S. 250, 254 n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (“Though more limited in some respects not relevant here, a Bivens action is the federal analog to suits brought against state officials under [§ 1983].”).
In the § 1983 context, we have recognized a number of tests for identifying state action. See Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir.1983) (describing the government nexus test, the joint action test, the public function test and the state compulsion test). For our purposes, the most applicable is the “public function” test: a private entity may engage in state action where it exercises “powers traditionally exclusively reserved to the State.” Jackson v. Metro. Edison Co., 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In West v. Atkins, the Supreme Court applied a variation of that test in concluding that private correctional employees under contract with North Carolina were amenable to suit under § 1983 for failing to render constitutionally adequate medical care. See 487 U.S. 42, 49-51, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Court found state action present in the § 1983 action because the defendant exercised power “possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.” Id. at 49, 108 S.Ct. 2250 (internal quotation marks and citation omitted). Ten years before West, the Court had recognized an obligation on the part of state correctional employees “to provide medical care for those whom it is punishing by incarceration.” Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (extending Bivens liability to federal correctional employees). In finding such an obligation under the Constitution, the Estelle Court reasoned that “[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.” Estelle, 429 U.S. at 103, 97 S.Ct. 285.
Similarly, in evaluating whether a prison physician employed as an independent con *856 tractor was amenable to suit under § 1983, the West Court stated:
If [the physician] misused his power by demonstrating deliberate indifference to [the prisoner’s] serious • medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State’s exercise of its right to punish [the prisoner] by incarceration and to deny him a venue independent of the State to obtain needed medical care.
West, 487 U.S. at 55, 108 S.Ct. 2250. In reaching this conclusion, the Court noted that “[i]t is only those physicians authorized by the State to whom the inmate may turn” and that “[u]nder state law, the only medical care [the prisoner] could receive for his injury was that provided by the State.” Id. The Court rejected the notion that, because the physician was an independent contractor rather than a direct employee of the prison, the state action analysis would change. Instead, the Court held that, “[w]hether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner.” Id. at 56, 108 S.Ct. 2250. Thus, the Court concluded, because the private employee was “fully vested with state authority to fulfill essential aspects” of the state’s duty to provide medical care to state prisoners, he was fulfilling a public function and was therefore amenable to § 1983 liability. Id. at 57, 108 S.Ct. 2250.
In our view, there is no principled basis to distinguish the activities of the GEO employees in this case from the governmental action identified in West. Pollard could seek medical care only from the GEO employees and any other private physicians GEO employed. If those employees demonstrated deliberate indifference to Pollard’s serious medical needs, the resulting deprivation was caused, in the sense relevant for the federal-action inquiry, by the federal government’s exercise of its power to punish Pollard by incarceration and to deny him a venue independent of the federal government to obtain needed medical care. On this point, West is clear.
The Fourth Circuit does not share our understanding of West. The Holly majority concluded that West’s reasoning does not apply to privately operated federal prisons because the relationship among the state, the physician and the prisoner is “very different in this case, where the correctional facility is privately run, than in West ..., where the state itself was directly responsible for managing the prison.” Holly, 434 F.3d at 294. Curiously, the Fourth Circuit’s reading of West suggests that independent contractors are state actors when directly hired by the state, but that employees of an independent contractor are not state actors because they are not hired by the state. We cannot subscribe to such an illogical reading of West. As Judge Motz noted in her concurrence in Holly, West itself rejected the notion that “by adding an additional layer, the government can contract away its constitutional duties.” Id. at 299 n. 1 (Motz, J., concurring in the judgment). Instead, West makes clear that “ ‘[contracting out’ care ‘does not relieve’ the government of its ‘constitutional duty’ to provide adequate care or ‘deprive inmates of the means to vindicate their Eighth Amendment rights.’ ” Id. (quoting West, 487 U.S. at 55-56,108 S.Ct. 2250).
Nor do we find convincing the Fourth Circuit’s reliance on Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). See Holly, 434 F.3d at 293. Contrary to the Fourth Circuit’s holding, that case does not stand for the proposition that private prison employees never act under color of federal or state law. See id. Indeed, the Court in Richardson expressly noted that it did “not address[ ] whether the defendants are *857 liable under § 1983 even though they are employed by a private firm.” 521 U.S. at 413, 117 S.Ct. 2100. Rather, the Court there addressed only the question of whether private prison guards at state prisons are entitled to qualified immunity when sued for constitutional violations, not whether those guards acted under color of federal or state law. See id. As other cases confirm, the immunity question is fundamentally distinct from the governmental action question we encounter here. See Wyatt v. Cole, 504 U.S. 158, 168-69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (holding that “private defendants” were not entitled to qualified immunity, but remanding for a determination of whether they were liable as government actors); Jensen v. Lane County, 222 F.3d 570, 580 (9th Cir.2000) (holding that a private physician, contracting with a county psychiatric hospital, was liable as a state actor but was not entitled to qualified immunity).
In Richardson, the Court explained that qualified immunity applies only where “a tradition of immunity was so firmly rooted in the common law ... that Congress would have specifically so provided had it wished to abolish the doctrine.” 521 U.S. at 403, 117 S.Ct. 2100 (internal quotation marks and citation omitted). The Court noted that, although private individuals had operated correctional facilities in the 18th and 19th centuries, those individuals did not historically enjoy qualified immunity. Id. at 404-07, 117 S.Ct. 2100. Because there was therefore no “ ‘firmly rooted’ tradition of immunity applicable to privately employed prison guards,” those private guards were not entitled to qualified immunity. Id. at 404, 412, 117 S.Ct. 2100.
Contrary to the Fourth Circuit’s understanding, the Richardson Court’s observation that private individuals “were heavily involved in prison management during the 19th century,” 521 U.S. at 405, 117 S.Ct. 2100, does not mean that private prison guards exercise a power that is not “traditionally exclusively reserved to the State” under the public function test for identifying state action. Holly, 434 F.3d at 293. The Holly majority looked to the “operation of the prison, not the fact of [the prisoner’s] incarceration,” to conclude that private prison guards did not perform a traditionally public function. Id. The Holly majority, however, does not provide, nor can we identify, any support for such a distinction. The relevant function here is not prison management, but rather incarceration of prisoners, which of course has traditionally been the State’s “exclusive prerogative.” Rendell-Baker, 457 U.S. at 842, 102 S.Ct. 2764 (internal quotation marks and citation omitted). West reflects this understanding that the relevant function is incarceration, explaining that a prisoner’s injury from inadequate medical care would be “caused, in the sense relevant for state-action inquiry, by the State’s exercise of its right to punish [the prisoner] by incarceration.” 487 U.S. at 55, 108 S.Ct. 2250.
Likewise, in the § 1983 context, our sister circuits have routinely recognized that imprisonment is a fundamentally public function, regardless of the entity managing the prison. The Fifth Circuit, for example, has held that “confinement of wrongdoers — though sometimes delegated to private entities — is a fundamentally governmental function. These [private] corporations and their employees are therefore subject to limitations imposed by the Eighth Amendment.” Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir.2003) (per curiam). Likewise, the Sixth Circuit has held that private prison employees “perform!] the ‘traditional state function’ of operating a prison.” Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996); see also Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102 (6th *858 Cir.1991) (per curiam); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir.1985). And, in his dissent, in Richardson, Justice Scalia, joined by three other Justices, noted that “private prison management firms, who perform the same duties as state-employed correctional officials, ... exercise the most palpable form of state police power.” Richardson, 521 U.S. at 414, 117 S.Ct. 2100 (Scalia, J., dissenting).
In accord with West and other federal courts of appeal, we hold that there is but one function at issue here: the government’s power to incarcerate those who have been convicted of criminal offenses. We, decline to artificially parse that power into its constituent parts — confinement, provision of food and medical care, protection of inmate safety, etc. — as that would ignore that those functions all derive from a single, public function that is the sole province of the government: “enforcement of state-imposed deprivation of liberty.” Richardson, 521 U.S. at 416, 117 S.Ct. 2100 (Scalia, J., dissenting) (noting that this function is “a prototypically governmental function”). Because that function is “traditionally the exclusive prerogative of the [government],” it satisfies the “public function” test under Rendell-Baker. 457 U.S. at 842, 102 S.Ct. 2764 (internal quotation marks and citation omitted).
Finally, we note that in Malesko, the Supreme Court explicitly left open the possibility that private prison employees could act under color of federal law and therefore face Bivens liability. The Court, in holding that a corporate entity operating a federal prison could not be subject to Bivens liability, noted that “the question whether a Bivens action might lie against a private individual is not presented here.” Malesko, 534 U.S. at 65, 122 S.Ct. 515. The dissent, authored by Justice Stevens, confirmed that this question remained open:
The Court recognizes that the question whether a Bivens action would lie against the individual employees of a private corporation like Correctional Services Corporation (CSC) is not raised in the present case. Both CSC and [Malesko] have assumed Bivens would apply to [private prison employees], and the United States as amicus maintains that such liability would be appropriate under Bivens.... [T]he reasoning of the Court’s opinion relies, at least in part, on the availability of a remedy against employees of private prisons.
Id. at 79 n. 6, 122 S.Ct. 515 (Stevens, J., dissenting) (internal citation omitted). Thus, despite the contrary holding in the Fourth Circuit, we conclude that the GEO employees act under color of federal law for purposes of Bivens liability.[11]
2. Availability of a Bivens Remedy
Even where defendants have engaged in federal action, we do not always allow Bivens suits to go forward. We begin with a review of the Supreme Court’s evolving Bivens jurisprudence to help illuminate when we will recognize an implied right of action against individuals engaged in federal action.
In Bivens, the Supreme Court “recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen’s constitu *859 tional rights.” Malesko, 534 U.S. at 66, 122 S.Ct. 515. In the years following Bivens, the Court recognized a Bivens cause of action on only two occasions. In Davis v. Passman, 442 U.S. 228, 248-49, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court held that the plaintiff stated a cause of action for money damages against her former employer, a member of the United States Congress, for employment discrimination in violation of the Due Process Clause of the Fifth Amendment. The following year, in Carlson v. Green, 446 U.S. 14, 24, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court held that a federal inmate could bring suit for money damages against federal prison officials under the Eighth Amendment.
Since Carlson and Davis, the Supreme Court has “consistently refused to extend Bivens liability to any new context or new category of defendants.” Malesko, 534 U.S. at 68, 122 S.Ct. 515. Indeed, the Court has “rejected invitations to extend Bivens ” in every new factual and legal context presented after Carlson. Id. at 70, 122 S.Ct. 515; see, e.g., id. at 63, 122 S.Ct. 515 (declining to allow an implied right of action for an inmate alleging Eighth Amendment violations against a private corporation operating a federal prison); FDIC v. Meyer, 510 U.S. 471, 473, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (delining to allow an implied right of action against a federal agency); Schweiker v. Chilicky, 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (declining to allow an implied right of action for disabled persons who were allegedly denied Social Security benefits in violation of the Fifth Amendment); Bush v. Lucas, 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (declining to allow an implied right of action for a federal employee allegedly disciplined in violation of the First Amendment); Chappell v. Wallace, 462 U.S. 296, 297, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (declining to allow an implied right of action for military personnel alleging racial discrimination by superior officers). Although Bivens remains intact, it is apparent that the era Justice Scalia referred to as the “heady days in which [the Supreme] Court assumed common-law powers to create causes of action” is no more. Malesko, 534 U.S. at 75, 122 S.Ct. 515 (Scalia, J., concurring).
The Court’s most recent consideration of whether to extend Bivens distills its prior three decades of jurisprudence into a two part test:
[0]ur consideration of a Bivens request follows a familiar sequence, and on the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision whether to recognize a Bivens remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a Bivens remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.
Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (internal quotations and citations omitted). Applying Wilkie’s two-part test, we hold that a Bivens cause of action is available here.
a. Application of the Wilkie Two-Part Test
Under Wilkie, we first must identify whether “any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial *860 Branch to refrain from providing a new and freestanding remedy in damages.” Id. Second, even in the absence of an alternative, we must look to any “special factors counselling hesitation before authorizing a new kind of federal litigation.” Id. (internal quotation marks and citation omitted). We address each issue in turn and conclude that Pollard should be entitled to pursue his Eighth Amendment claim against the GEO employees.
(i) Wilkie Part One: Alternative Existing Processes
The GEO employees argue that because Pollard can pursue a state law negligence action for damages, he has an “alternative, existing process” for protecting his interests and thus should not be afforded a Bivens remedy.[12] The Magistrate Judge agreed, stating in his recommendation and findings that “[i]n light of the existing alternative remedies available to [Pollard], the court finds that extending Bivens would not provide [Pollard] with an otherwise nonexistent cause of action.” Neither the Ninth Circuit nor the Supreme Court has ever addressed whether the existence of a state remedy, alone, is sufficient to displace the Bivens remedy. We conclude that the mere availability of a state law remedy does not counsel against allowing a Bivens cause of action.
In evaluating whether alternative, potential remedies preclude a Bivens action, the Court has consistently stressed that only remedies crafted by Congress can have such a preclusive effect. For example, in Carlson, the Court held that where “defendants show that Congress has provided an alternative remedy which it explicitly declarefs] to be a substitute for recovery directly under the Constitution and view[s] as equally effective,” no Bivens remedy is available. Carlson, 446 U.S. at 18-19, 100 S.Ct. 1468. Likewise, in Bush v. Lucas, the Court held that the Bivens remedy for an alleged First Amendment violation was precluded by an “elaborate remedial system that has been constructed step by step” by Congress. 462 U.S. at 388, 103 S.Ct. 2404; see Schweiker, 487 U.S. at 425, 108 S.Ct. 2460 (holding that a remedial scheme created by Congress, even if incapable of addressing all of plaintiffs injuries, precluded a Bivens action).
*861 In Malesko, however, the Court implicitly suggested that non-congressionally created remedies might displace Bivens. See 534 U.S. at 70, 122 S.Ct. 515. There, the Court noted that it had consistently declined to extend Bivens except where the extension would “provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or [would] provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer’s unconstitutional conduct.” Id. (emphasis in original). The GEO employees, like the Fourth and Eleventh Circuits, place great weight on this “any alternative remedy” language. They argue that it shows that state tort law can preclude a Bivens remedy. See Alba, 517 F.3d at 1253-55; Holly, 434 F.3d at 295-97.[13] Wilkie, however, demonstrates that this reads too much into the Court’s words in Malesko.
In Wilkie, the Court made clear that the mere existence of an alternative state remedy, alone, did not preclude a Bivens action. There, the Court noted that the plaintiff had “alternative, existing” remedies for the alleged violation of his Fifth Amendment rights, including state tort remedies, administrative claims against the Bureau of Land Management, and tort claims under the Federal Tort Claims Act. 551 U.S. at 553-54, 127 S.Ct. 2588. Even though the plaintiff undoubtedly had a “tort remedy” available to him, the Court concluded that because “the forums of defense and redress open to [the plaintiff] are a patchwork, an assemblage of state and federal, administrative and judicial benches applying regulations, statutes and common law rules,” “[i]t would be hard to infer that Congress expected the Judiciary to stay its Bivens hand, but equally hard to extract any clear lesson that Bivens ought to spawn a new claim.” Id. at 551, 554, 127 S.Ct. 2588. Thus, the mere existence of a potential state law claim did not suffice to preclude a Bivens action.
Instead, the Wilkie opinion requires that we not simply inquire into the existence of alternative remedies generally, but rather that we ask whether “any alternative, existing process for protecting the interest amounts to a convincing reasons for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.” Id. at 550, 127 S.Ct. 2588. For two reasons, state court remedies, alone, do not amount to such a “convincing reason.”
First, as Wilkie implies and the Court has repeatedly recognized, we consider alternative remedies because the judicially created Bivens remedy should yield to congressional prerogatives under basic separation of powers principles. Id. at 554, 127 S.Ct. 2588 (looking to alternative remedies for evidence that “Congress expected the Judiciary to stay its Bivens hand”); see also Malesko, 534 U.S. at 69, 122 S.Ct. 515 (“So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability.”); Schweiker, 487 U.S. at 423, 108 S.Ct. 2460 (“When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for consti *862 tutional violations ... we have not created, additional Bivens remedies.”); Bush, 462 U.S. at 378, 103 S.Ct. 2404 (“When Congress provides an alternative remedy, it may ... indicate its intent ... that the Court’s power should not be exercised.”); Carlson, 446 U.S. at 23, 100 S.Ct. 1468 (“The question whether [an] action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution.”). So too has this circuit recognized the importance of deferring to Congress in this arena. See W. Radio Servs. Co. v. United States Forest Serv., 578 F.3d 1116, 1123 (9th Cir.2009) (finding remedies available under the Administrative Procedure Act indicative of congressional intent to displace Bivens), Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir.2003) (noting that a Bivens claim can be precluded when Congress either provides an alternative remedy or provides a mechanism for relief it considers adequate to remedy constitutional violations); Berry v. Hollander, 925 F.2d 311, 314 (9th Cir.1991) (“So long as Congress’ failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment.” (internal quotation marks omitted)).
Second, the Court has recognized that the policy “obviousfly]” motivating Bivens was “that the liability of federal officials for violations of citizens’ constitutional rights should be governed by uniform rules.” Carlson, 446 U.S. at 23, 100 S.Ct. 1468. In Carlson, the Court made a point of noting that the plaintiffs action would have failed under the survivorship law of the forum state. Id. at 17 n. 4, 100 S.Ct. 1468. The Court emphasized that “only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct.” Id. at 23, 100 S.Ct. 1468. As we recently noted in Castaneda v. United States, 546 F.3d 682, 701 (9th Cir.2008), overruled on other grounds by Hui v. Castaneda, — U.S. -, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010),[14] “the remedies we and the Supreme Court have held to preclude Bivens ... applied uniformly throughout the republic.” Although Castaneda is no longer good law, this observation was not addressed by the Supreme Court and comports with our analysis of the Court’s Bivens jurisprudence.[15] See Schweiker, 487 U.S. at 414, 108 S.Ct. 2460 (holding that Social Security regulations and procedures precluded a Bivens action); Bush, 462 U.S. at 368, 103 S.Ct. 2404 (holding that federal civil service regulations precluded a Bivens remedy).
If we were to allow state tort law to preclude a Bivens action for Pollard and similarly situated prisoners, the liability of federal officials for constitutional violations would no longer be governed by uniform rules. The substance, procedural requirements, and remedies of state tort law— especially with regard to causes of action for negligence and medical malpractice— *863 vary widely from state to state. For example, assuming Pollard were to bring a claim for medical malpractice under California law, the cap on his non-economic damages would be $250,000. See Cal. Civ. Code § 3333.2. But, under Oregon law (where Pollard was transferred in the midst of this litigation), Pollard’s medical malpractice claim would not be subject to the state’s non-economic damages cap. See Lakin v. Senco Prods., 329 Or. 62, 987 P.2d 463 (1999) (holding that non-economic damages cap mandated by Or.Rev.Stat. § 31.710(1) is unconstitutional as applied to common-law negligence claims). Likewise, the statute of limitations for bringing his suit under California law would be three years after the date of his injury or one year after he discovered the injury, whichever came first. See Cal.Civ.Proc. Code § 340.5. But Oregon law would require Pollard to bring his suit within two years of discovering the injury. See Or. Rev.Stat. § 12.110(4). We need not belabor the obvious point that state tort remedies are anything but “uniform.”
The Bivens inquiry turns in part on “bedrock principles of separation of powers,” Malesko, 534 U.S. at 69, 122 S.Ct. 515, but concluding that a Bivens cause of action must yield to state tort law does little to demonstrate deference to congressional prerogatives. Thus, we conclude that state remedies alone are insufficient to displace a Bivens remedy under the first prong of the Wilkie test.
(ii) Wilkie Part Two: “Special Factors Counselling Hesitation”
Wilkie’s second step requires us to “weight ] reasons for and against the creation of a new cause of action, the way common law judges have always done.” 551 U.S. at 554, 127 S.Ct. 2588. In other words, we must look to any “special factors counselling hesitation before authorizing a new kind of federal litigation.” Id. at 550, 127 S.Ct. 2588 (internal quotation marks and citation omitted). The Court has emphasized that we must differentiate “special ” factors from “any ” factors. McCarthy v. Madigan, 503 U.S. 140, 151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), superseded by statute, Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321, as recognized in Booth v. Churner, 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Although the Court has never compiled an exhaustive list of these “special” factors, some that the Court has previously considered include: (1) whether it is feasible to create a workable cause of action, Wilkie, 551 U.S. at 555, 127 S.Ct. 2588; (2) whether extending the cause of action would undermine Bivens’s deterrence goals, Malesko, 534 U.S. at 70-71, 122 S.Ct. 515; (3) whether an extension of Bivens would impose asymmetric liability costs on privately operated facilities as compared to government-operated facilities, id. at 72, 91 S.Ct. 1999; and (4) whether unique attributes of an area, like the military, give reason to infer that congressional inaction is deliberate, see Chappell, 462 U.S. at 304, 103 S.Ct. 2362. As the Court has already recognized a Bivens cause of action for inmates in government-run federal prisons, it appears that prisons do not have the types of unique attributes that counseled against recognizing a Bivens action for claims against the military in Chappell. Nor did the Court allude to any such unique attributes in Malesko. Thus, we address only the first three of these considerations.

(a) Feasibility

Pollard alleges a basic Eighth Amendment cause of action under Bivens. Since Carlson, courts have regularly recognized this type of action against federal prison officials, and the applicable standards are clear. See, e.g., Powell v. Lennon, 914 F.2d 1459 (11th Cir.1990); Berg v. Kincheloe, 794 F.2d 457 (9th Cir.1986); Gardner v. Wilson, 959 F.Supp. 1224, 1228 *864 (C.D.Cal.1997); Lowrance v. Coughlin, 862 F.Supp. 1090 (S.D.N.Y.1994). There is no need for the district court to craft new standards or remedies to address Pollard’s claims. Accordingly, there are no feasibility concerns that would counsel hesitation under Wilkie.
By contrast, the regime the GEO employees propose- — -allowing a Bivens cause of action to go forward only where a plaintiff would otherwise have no alternative remedy — would likely be difficult to administer. The Eighth Amendment protects against conditions of confinement that “involve the wanton and unnecessary infliction of pain ... [or are] grossly disproportionate to the severity of the crime warranting imprisonment.” Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). But many acts meeting that standard may not be covered by state tort law. For example, a prison inmate deprived of access to a toilet for several days would have a strong case against prison officers under Bivens. See DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir.2001) (concluding that exposure to human waste, even for 36 hours, would constitute a sufficiently serious deprivation to violate Eighth Amendment); see also Vinning-El v. Long, 482 F.3d 923, 924 (7th Cir.2007) (per curiam) (citing numerous cases on minimum level of hygiene required by the Eighth Amendment). But, although tort law imposes a duty on those with custody of another to protect that person “against unreasonable risk of physical harm,” Restatement (Second) of Torts § 314A(l)(a), (4) (1965), it is unclear whether deprivation of a toilet would amount to “physical harm.” Likewise, it is unclear whether a deprivation of outdoor exercise would amount to a tort violation, despite our conclusion that such deprivation constitutes an Eighth Amendment violation in certain circumstances. See Spain v. Procunier, 600 F.2d 189, 200 (9th Cir.1979). Nor is it apparent whether a prisoner could recover under state law for the denial of “basic necessities such as socks, toilet paper, and soap.” See Irabor v. Perry County Corr. Ctr., No. 06-0483-BH-C, 2008 WL 1929965, at *2 (S.D.Ala. Apr.30, 2008). Although a district court considering a constitutional claim based on such injuries stated that the plaintiff had “adequate state tort remedies available ... including, but not limited to, negligence and wantonness,” id. at *4, we find it somewhat less obvious which theory of state tort law, if any, would provide the plaintiff in that case with an opportunity for relief. A plaintiff might also seek to recover under an intentional infliction of emotional distress theory of recovery, but that cause of action has its own problems given that prison disciplinary measures regularly cause emotional distress by design.
These are not isolated examples, and the inquiry becomes even more complicated when a prisoner alleges an Eighth Amendment violation as the result of a combination of factors that may not, on their own, constitute a violation of state tort law. See Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (“Some conditions of confinement may establish an Eighth Amendment violation ‘in combination’ when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets.” (emphasis omitted)). Indeed, this very problem of identifying whether state , common law provides a remedy is likely to arise any time constitutional and state common law regulate similar conduct in different ways.
The dissent argues that these obvious difficulties are irrelevant because Pollard’s *865 injuries are “certainly ... covered by state tort law.” Dissenting Op. at 875. But this decision will have implications far beyond Pollard’s suit. Under the GEO employees’ proposed framework, as adopted by the dissent, in each case a court would need to identify whether state remedies provide relief for the plaintiffs particular claim. While in some instances that may prove an easy task, in others, like those identified above, it may be quite difficult. For questions of first impression, it would require a federal court to examine: (1) state common law, (2) state statutes, (3) state administrative regulations, (4) state constitutional provisions, (5) procedural requirements attendant to each alternative claim (including statutes of limitations, exhaustion requirements, etc.), and (6) the existence of a cause of action to enforce state law. Furthermore, under the GEO employees’ proposed framework, courts would potentially need to consider whether a plaintiffs claims would be frustrated by any viable defenses under state law. For example, a privately operated prison might assert the “government contractor” defense if sued under state tort law. See Boyle v. United Techs. Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (recognizing a defense immunizing federal contractors from liability where the contractor has conformed its behavior to precise government specifications and, if necessary, has warned the government of risks posed by those specifications).[16] Thus, unless such defenses are assessed prior to dismissing a Bivens action because of alternative state remedies, a prisoner in a privately operated facility may be foreclosed from relief, even though a prisoner housed in a governmentally run prison would have a cause of action. But, in the context of prisoner litigation, a court would often be required to make these types of determinations before the defendant has asserted any defenses or made any filing whatsoever (as was the case here). See 28 U.S.C. § 1915A (requiring federal courts to prescreen prisoner civil rights claims).[17] It is also worth noting that, in light of the ever-rising percentage of federal inmates incarcerated in private prison facilities, federal courts would be increasingly asked to make these types of determinations.[18]
*866 In sum, a Bivens cause of action for prisoners’ Eighth Amendment claims would be fairly straightforward to apply. By contrast, it would be difficult to administer a regime where Bivens claims were allowed to proceed only when state law would offer no remedy. While these observations are by no means dispositive of the question here presented, under Wilkie we are bound to consider them in deciding whether to allow a “new” cause of action to proceed, “the way common law judges have always done.” 551 U.S. at 554, 127 S.Ct. 2588.

(b) Deterrence

The Court has also looked to whether extending Bivens would undermine the “core purpose” of an implied cause of action: deterring individual officers from committing constitutional violations. Malesko, 534 U.S. at 74, 122 S.Ct. 515. Allowing a Bivens action to go forward here would not undermine that core purpose.
In Meyer, the Court declined to extend Bivens to permit suit against a federal agency, reasoning that plaintiffs could be expected to always choose to sue the federal agency over an individual who could assert qualified immunity as an affirmative defense. 510 U.S. at 485, 114 S.Ct. 996. To the extent that aggrieved parties would have “less incentive to bring a damages claim against individuals, ‘the deterrent effects of the Bivens remedy would be lost.’ ” Malesko, 534 U.S. at 69, 122 S.Ct. 515 (quoting Meyer, 510 U.S. at 485, 114 S.Ct. 996). Thus, Meyer concluded that allowing a Bivens claim against federal agencies “would mean the evisceration of the Bivens remedy, rather than its extension.” 510 U.S. at 485, 114 S.Ct. 996.
In Malesko, the Court echoed this reasoning in concluding that allowing Bivens suits to proceed against private prison corporations would undermine the deterrent effects of Bivens. 534 U.S. at 70-71, 122 S.Ct. 515. According to the Court, “if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury.” Id. at 71, 122 S.Ct. 515 (citing the plurality opinion and Justice O’Connor’s dissent in TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 464, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), for the proposition that corporations fare much worse before juries than do individuals). Thus, recognizing that corporations would likely bear the lion’s share of responsibility for Bivens damages if subject to an implied cause of action under the Constitution, the Court concluded that the deterrence goals of Bivens would be undermined by such an extension. Whatever deterrent effect a suit against a corporation may have, the Supreme Court explicitly rejected the notion that corporate deterrence is relevant to the core deterrence goals of Bivens. Id. (stating that corporate deterrence “has no relevance to Bivens, which is concerned solely with deterring the unconstitutional acts of individual officers”).
The instant case does not present the same problems. It simply cannot be disputed that allowing Bivens suits against private prison employees would not undermine Bivens’s goal of deterring unconstitutional acts by individuals. The dissent argues that state tort remedies are “supe *867 rior” to a Bivens remedy here, Dissenting Op. at 871, and that allowing Pollard to bring a Bivens action would not serve Bivens’ goal of deterrence, Dissenting Op. 875-76. We disagree. It is true that state tort remedies may often serve to deter unconstitutional conduct, and that it may be easier to prevail on such a claim than on an Eighth Amendment Bivens claim. Indeed, in an action to recover damages for personal injuries under state tort theories such as negligence or medical malpractice, the plaintiff would not be required to prove deliberate indifference, as required to establish an Eighth Amendment violation. See Estelle, 429 U.S. at 104, 97 S.Ct. 285. But while we acknowledge that the elements of a state tort claim may not be as demanding, we are not prepared to say that Bivens would have no marginal deterrent effect against individual employees of GEO.
For instance, in some states, a prisoner in Pollard’s position must submit a declaration by a physician attesting that the suit is not frivolous. See, e.g., Nev.Rev. Stat. § 41A.071 (“If an action for medical malpractice ... is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.”). It is unclear how a prisoner like Pollard, who filed this claim in forma pauperis, would be able to secure such a declaration. The Eleventh Circuit in Alba concluded that a similar certification requirement in Georgia did not render the inmate’s state remedies ineffective because it merely placed him in “the same shoes as anyone else in Georgia filing a professional malpractice claim,” under “no stricter rules than the rest of Georgia’s residents.” 517 F.3d at 1255. But federal courts have long recognized that inmates proceeding pro se are not in the “same shoes” as other citizens. See, e.g., Houston v. Lack, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (creating the more lenient “prison mailbox rule” — deeming a document filed by a pro se prisoner “filed” as of the time the prisoner delivers it to prison authorities for mailing (rather than the time it is received by the court) — because “whereas the general rule has been justified on the ground that a civil litigant who chooses to mail a notice of appeal assumes the risk of untimely delivery and filing, a pro se prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk” (citation omitted)).
Additionally, Bivens may allow for recovery of greater damages in some cases than a state tort law remedy. As discussed infra, were Pollard to bring a claim for medical malpractice under California law, there would be a cap on the amount of non-economic damages he could recover. See Cal. Civ.Code § 3333.2. There is no similar cap on non-economic damages under Bivens. Thus, for a truly egregious case of neglect or abuse, a medical professional at a privately operated prison would face significantly greater liability under Bivens than state tort law. Furthermore, to be entitled to punitive damages under California law, a plaintiff must demonstrate “oppression, fraud, or malice.” Cal. Civ.Code § 3294. By contrast, once a plaintiff has successfully met the “deliberate indifference” standard under the Eighth Amendment — requiring that the conduct be “wanton,” Wilson v. Seiter, 501 U.S. 294, 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) there is little more that such a plaintiff would need to prove to establish a convincing argument for an award of punitive damages. These significant differences in the potential liability faced by privately operated federal prisons are prime examples of the “marginal deter *868 rence” that Bivens offers. Thus, we do not find that this “special factor” counsels hesitation.

(c) Asymmetrical Liability Costs

The Court has also expressed concerns about imposing asymmetric liability costs on privately operated facilities as compared to government-operated facilities. Malesko, 534 U.S. at 72, 122 S.Ct. 515. We are equally concerned about issuing a decision that will yield disparate rights and remedies among inmates in private and public prisons. Unfortunately, under the current Bivens regime, asymmetries may remain irrespective of whether we recognize or deny a Bivens cause of action here.
Unlike officers employed by public prisons, the GEO employees may not be entitled to qualified immunity, and as a result, prisoners asserting claims against them may be able to recover more often than their counterparts in governmentally run prisons. Compare Richardson, 521 U.S. at 401, 117 S.Ct. 2100 (holding that employees of privately operated state prisons are not entitled to qualified immunity), with Butz v. Economou, 438 U.S. 478, 501, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (holding that “federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers” (emphases removed)), and Holly, 434 F.3d at 294 (stating that employees of privately operated federal prisons are not entitled to qualified immunity). We need not decide the issue of qualified immunity here.
On the other hand, if we conclude that Pollard cannot bring a suit under Bivens, then only inmates in public prisons will be able to vindicate their constitutional rights. Prisoners would thereby have entirely different rules governing their rights depending upon whether they are incarcerated in a public or private prison (and, for that matter, in which state the private prison is located). This outcome is equally undesirable. As asymmetries will persist irrespective of the outcome of this case, this consideration does not counsel hesitation in recognizing a Bivens remedy here.
IV. CONCLUSION
We conclude that Pollard’s suit under Bivens against the GEO employees for alleged violations of his Eighth Amendment rights should be allowed to proceed. We reach that conclusion because (1) the GEO employees act “under color of federal law” for purposes of Bivens liability; and (2) a faithful application of Wilkie’s two-part test counsels that state tort remedies alone are insufficient to displace Bivens and there are no “special factors counsel-ling hesitation” in allowing Pollard’s suit to proceed. We therefore reverse and remand to the district court for further proceedings consistent with this opinion. To the extent Pollard’s appeal seeks to challenge the district court’s dismissal of GEO from the lawsuit, we affirm the district court’s disposition as to that issue.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.

. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is an extraordinary precedent that gives a party harmed by constitutional error a remedy against federal officials in a way that parallels the § 1983 remedy against state actors. See Hartman v. Moore, 547 U.S. 250, 254 n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).

. See Richardson v. McKnight, 521 U.S. 399, 401, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (holding that employees of a private prison management firm are not entitled to qualified immunity from suit by prisoners charging a violation of 42 U.S.C. § 1983).

. And arguably a third. In Peoples v. CCA Det. Ctrs., 422 F.3d 1090 (10th Cir.2005), the Tenth Circuit refused to recognize a Bivens action brought by a federal prisoner against individual employees of a privately-operated pretrial detention center because "state or federal law affordfed] the prisoner an alternative cause of action for damages for the alleged injury.” Peoples, 422 F.3d at 1108. The case was reheard en banc by the Tenth Circuit, and an evenly divided panel affirmed the district court's dismissal of the complaint, based on the existence of plaintiff's alternative remedy under state negligence law. Peoples v. CCA Det. Ctrs., 449 F.3d 1097 (10th Cir.2006) (en banc) (per curiam). Thus, while the case carries no affirmative precedential value, it is still another example of a federal court refusing to recognize a Bivens action in this area.

. Pollard brought a Bivens action against seven employees of the GEO Group Inc., a private corporation that operates, under contract with the Bureau of Prisons, the federal prison in which Pollard was incarcerated. Pollard alleged that GEO employees violated his Eighth Amendment rights when, after sustaining injuries to both elbows in an accident in which defendants played no part, he was directed to put on a jumpsuit and wear a "black box” mechanical restraint device on his wrists, and was not provided with assistance to feed or bathe himself — all of which caused him pain and discomfort, but no residual injuries.

. Bivens was not charged with a crime, thus, suppression of the evidence at a criminal trial was not available as a deterrent against such police conduct.

. Under the Federal Tort Claims Act, only the United States could be sued, not the individual federal agents.

. The Supreme Court has also declined to imply a Bivens cause of action in new circumstances not directly related to the existence of alternative state remedies. See Maleslco, 534 U.S. at 74, 122 S.Ct. 515 (holding that Bivens liability does not extend to a corporate entity because the deterrence rationale applies only to individual actors); Wilkie, 551 U.S. at 562, 127 S.Ct. 2588 (denying Bivens claim due to the "difficulty of devising a workable cause of action” to remedy plaintiffs grievances, which included allegations of trespass and extortion by Bureau of Land Management officials, retaliatory prosecution for his refusal to grant the Bureau an easement on his ranch, and unauthorized survey of his land by Bureau employees).

. The Fourth Circuit also grounded its dismissal of plaintiff's Bivens action on the independent basis that the private employees of the prison were not federal actors for the purpose of Bivens. Holly, 434 F.3d at 292-93.

. As mentioned in footnote 3, the panel majority's decision probably also creates a conflict with the Tenth Circuit's holding in Peoples v. CCA Det. Ctrs., 449 F.3d 1097 (10th Cir.2006) (en banc), in which an evenly divided en banc panel of the Tenth Circuit affirmed the district court’s dismissal — which was based on the existence of alternative remedies under state negligence law — of a Bivens action brought by a federal prisoner against individual employees of a privately-operated pretrial detention center.

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. At the time Plaintiff-Appellant Pollard was incarcerated at TCI, the GEO Group, Inc., was known as Wackenhut Corrections Corporation.

. As the district court dismissed Pollard’s suit pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, we must accept as true all allegations in Pollard's complaint and construe them in the light most favorable to him. See Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000).

. The seven GEO employee defendants were Raymond Andrews, Margaret Minneci, Jonathan Akanno, Robert Spack, Bob Steifer, Everett Uzzle and Becky Maness.

. We note that it is unclear whether Pollard appeals this dismissal. After GEO was dismissed from the litigation, Pollard nevertheless continued to name the organization as a defendant, although the later district court orders do not address GEO’s liability. On appeal, Pollard has again named GEO, but his briefs are focused solely on the GEO employees’ liability. Whether or not GEO is properly a party to this appeal, any liability is squarely foreclosed by Malesko, 534 U.S. at 63-64, 74, 122 S.Ct. 515 (holding that Bivens should not be extended to allow recovery against a private corporation operating a halfway house under contract with the BOP). Thus, we affirm the district court’s dismissal of Pollard’s claims against The GEO Group, Inc.

. Raymond Andrews was not included in Pollard's appeal from the district court’s judgment, Everett Uzzle passed away in March 2008, and there is no evidence that physician Marshall Lewis was ever served in the original lawsuit or this appeal.

. The GEO employees also point out that they were never served with the notice of appeal, but concede that under Fed. R.App. P. 3, such a failure does not affect the validity of the appeal. We agree, especially in light of the liberal construction Fed. R.App. P. 3 is due. Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) ("Courts will liberally construe the requirements of Rule 3.”).

. We further note that GEO and its employees were twenty-one months late in filing their answering brief. In a motion before this court — filed over a year after their answering brief was due — appellees argued that the district court lacked personal jurisdiction and that this court therefore lacked jurisdiction to consider the appeal. That motion was denied — and GEO was ordered to file an answering brief — in April 2009.

. Neither the Magistrate Judge nor the district judge reached the question of whether Pollard’s allegations, if true, would amount to a cognizable claim under the Eighth Amendment. We leave it to the district court, if necessary, to make that determination upon remand.

. The dissent suggests that this latter holding is also in conflict with Tenth Circuit law. See Dissenting Op. at 868-69 (stating that "[u]ntil now, the federal circuits that have addressed the issue have held correctly that a prisoner may not maintain such an action" and citing Peoples v. CCA Det. Ctrs., 422 F.3d 1090 (10th Cir.2005)), vacated in relevant part and off d by equally divided en banc panel, 449 F.3d 1097 (10th Cir.2006) (per curiam), cert. denied, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006) and 549 U.S. 1063, 127 S.Ct. 687, 166 L.Ed.2d 534 (2006). In fact, the portion of the Tenth Circuit’s opinion addressing this issue was vacated by an equally divided en banc panel under Tenth Circuit rules and lacks any precedential value. Peoples, 449 F.3d at 1099 ("We are evenly divided, however, for substantially the same reasons as are set forth in the panel's majority and dissenting opinions, on the question whether a Bivens action is available against employees of a privately-operated prison. Because there is no majority on the en banc panel, the district court’s ruling in Peoples II on this issue is affirmed by an equally divided court.”).

. We note that the GEO employees may also qualify as federal actors under the "nexus” test as articulated by Brentwood Academy v. Tennessee Secondary School Athletic Ass’n, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). That test asks whether “there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.” Brentwood, 531 U.S. at 295, 121 S.Ct. 924 (internal quotations omitted). Given the clear applicability of the “public function” test, we need not undertake this analysis.

. In Malesko, the Court noted that one of the plaintiff’s alternative existing processes for seeking a remedy was his "full access to remedial mechanisms established by the BOP.” 534 U.S. at 74, 122 S.Ct. 515. Although GEO employees' counsel could not identify at oral argument whether there were any BOP administrative remedies available to Pollard, it would appear that none exist. The BOP’s Administrative Remedy Program applies to those incarcerated in BOP facilities and halfway houses operated under contract with the BOP. 28 C.F.R. § 542.10(b) (2002). It does not apply to individuals confined in "other non-federal facilities.” Id. Thus, according to a report released by the Department of Justice in 2008:
[t]he Administrative Remedy Program is administered differently for inmates in private facilities. Should an inmate at a private facility wish to appeal a local decision, the inmate may file with the local institution. Inmates who wish to grieve a specific BOP matter (which is limited to classification, designation, sentence computation, reduction of sentence, removal or disallowance of Good Conduct Time, or issues directly involving BOP staff) may utilize the progressive BOP administrative remedy process available to all federal inmates.
U.S. Dep't of Justice, Legal Resource Guide to the Federal Bureau of Prisons 35 (2010), available at http://www.bop.gov/news/PDFs/ legal_guide.pdf. As Pollard’s claim does not fall within any of the "specific BOP matter[s],” he does not have a BOP administrative remedy under 28 C.F.R. § 542.10. Nor did GEO employees’ counsel identify any administrative remedies provided by the corporation itself. In sum, whatever effect the BOP remedies may have had on the Malesko Court's determination of the propriety of extending Bivens, it is irrelevant here.

. The dissent also misreads Malesko to hold that "[t]he availability of an adequate alternative remedy should end the analysis [of whether to extend Bivens]." Dissenting Op. at 874. Malesko, however, did not set forth any such blanket rule. Rather, Malesko reasoned that because the plaintiff had alternative remedies against individual officers — and because he was not seeking recovery against an individual officer — allowing plaintiff to proceed with an implied cause of action would not serve the core deterrence goals of Bivens. See 534 U.S. at 73-74, 122 S.Ct. 515. Here, however, Pollard is seeking a remedy against an individual officer, and thus Malesko is not controlling.

. Although involving Bivens claims against federal officers, Hui v. Castaneda was ultimately decided solely on the issue of absolute immunity under 42 U.S.C. 233(a). It therefore has no direct bearing on this case.

. The dissent contends that Malesko disproves this rule, arguing that “the Court declined to recognize a Bivens action because of state remedies." Dissenting Op. at 871 (emphasis added). That is not Malesko’s holding. Malesko also relied on administrative remedies fashioned by the BOP — which apply uniformly across federal prisons — in reaching its holding. See 534 U.S. at 74, 122 S.Ct. 515. Furthermore, as discussed above, Malesko also relied on the fact that the plaintiff was not seeking recovery against an individual officer. See id. at 73-74, 122 S.Ct. 515.

. The dissent states that there "is no reason to think that ... the government contractor defense ... is applicable here.” Dissenting Op. at 874. But there is no way to know on the record before us whether or not that is the case. Cf. Malesko, 534 U.S. at 74 n. 6, 122 S.Ct. 515 (noting that “[t]he record here would provide no basis for [the government contractor] defense”). The district court did not require GEO or its employees to file any response to Pollard’s suit before determining that his Bivens claim was precluded by alternative state tort remedies. This is not unusual. Under 28 U.S.C. § 1915A, when a Bivens action is filed by a prisoner, the district court must pre-screen any such complaints and dismiss those actions that fail to state a claim upon which relief can be granted. Because the GEO employees were not required to respond to Pollard’s complaint, we have no idea whether they could pursue the government contractor defense were Pollard’s claims to be tried under state tort law. Nor do the GEO employees have any incentive to make such an argument at this stage of the litigation, as their argument rests on the existence of adequate alternative remedies under state tort law which would be foreclosed by the successful invocation of such a defense. Thus, the GEO employees may have a complete defense to liability under state tort law or they may not; we simply don't know.

. Another, closely related, example of one of these potential defenses is federal preemption. See Saleh v. Titan Corp., 580 F.3d 1, 11-13 (D.C.Cir.2009) (holding that plaintiff’s state law tort actions against private military contractors working for the federal government were preempted by federal law).

. According to the United States Justice Department’s statistics, as of year-end 2000, 10.7% of all federal prisoners were held in privately operated prisons. Bureau of Justice Statistics, U.S. Dep’t of Justice, Prisoners in *866 2008 17, 38 (Dec.2009), available at hltp://bjs. ojp.usdoj.gov/conten1/pub/pd£''p08.pdf (recording 145,416 total federal prisoners as of December 31, 2000, of which 15,524 were housed in privately operated prisons). As of year-end 2008, that percentage was 16.5%, thus showing an increase of almost 6% in those eight years alone. Id. (recording 201,-280 total federal prisoners as of December 31, 2008, of which 33,162 were housed in privately operated prisons).