[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14508

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00159 CV-3

LUIS FRANCISCO ALBA,

Plaintiff-Appellant,

versus

SUSAN MONTFORD, JOAN ROY,
MICHAEL V. PUGH, JOHN NMI GLUCH,
FNU LITTMAN, CLARA YAWN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(February 22, 2008)**

Before BIRCH, CARNES and COX, Circuit Judges.

COX, Circuit Judge:

This appeal presents the narrow question of whether a federal prisoner incarcerated in a privately operated prison may pursue a *Bivens* action against employees of the private prison for allegedly violating his Eighth Amendment right to medical treatment. The district court held that he cannot. We affirm.

## I. Background

Luis Francisco Alba, a federal prisoner, filed a *pro se* civil rights complaint while incarcerated at the McRae Correctional Facility in McRae, Georgia. McRae is a private facility owned and operated by Corrections Corporation of America ("CCA"). CCA operates the prison under a contract with the Federal Bureau of Prisons ("BOP").

According to his complaint, Alba underwent surgery for a benign goiter in his throat while at McRae. Alba alleges that the surgery damaged his vocal cords, and, that despite repeated requests, he was not given appropriate post-operative treatment. Alba sued individual CCA employees,[1] but not CCA. He specifically alleges that the Defendants, acting pursuant to CCA policy, refused to schedule thyroplasty surgery, a corrective procedure which a throat specialist suggested that Alba undergo. He

---

[1] The Defendants are: Susan Montford, McRae Health Services Administrator; Dr. Joan Roy, Clinical Director at McRae; Michael V. Pugh, McRae Warden; John Nmi Gluch, Division Managing Director for CCA; Dr. Fnu Littman, member of McRae Health Services Committee; and Clara Yawn, member of McRae Health Services Committee.

alleges that the Defendants refused to authorize the surgery because CCA considered the surgery "elective" in order to contain medical costs. He alleges that, by refusing to schedule the thyroplasty, the Defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. In his complaint, Alba seeks money damages and an order directing the Defendants to perform the thyroplasty.

Because Alba was proceeding in forma pauperis, his complaint was screened pursuant to 28 U.S.C. § 1915A.[2] The screening magistrate judge issued a report and recommendation that Alba's complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.[3] Although Alba sought relief under 42 U.S.C. § 1983, the magistrate judge interpreted his complaint as asserting a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), noting that § 1983 provides a right of action to remedy unconstitutional state, not federal, conduct. The

[2]     Section 1915A provides: "(a) Screening. The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. (b) Grounds for dismissal. On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

[3]     Section 1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious;(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

3

magistrate judge found that Alba's complaint failed to state a *Bivens* claim because Alba had adequate remedies in state court against the Defendants, by way of negligence or medical malpractice actions.

The district court concurred with the magistrate judge's recommendation and overruled Alba's objections to it. Like the magistrate judge, the court held that Alba sought relief under *Bivens* and that he failed to state a claim for relief under *Bivens* because he had adequate state court remedies. Thus, the court dismissed Alba's complaint and action.[4] Alba appeals with the aid of appointed counsel. Alba is no longer incarcerated, and, according to the Defendants, has likely been deported to Colombia, South America.[5]

## II. Issue on Appeal and Standard of Review

The only issue on appeal is whether the district court erred in dismissing Alba's complaint for failure to state a claim upon which relief can be granted. We review dismissal under § 1915(e)(2)(B)(ii) de novo and view the allegations in the complaint as true. *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii). *Mitchell v.*

---

[4]    The court dismissed Alba's action before the Defendants were served. Consequently, the Defendants never entered an appearance and we have only a minimal record on appeal.

[5]    As noted above, in addition to monetary damages, Alba sought an order directing the Defendants to perform a thyroplasty. On appeal, Alba only argues that he is entitled to damages. Therefore, we need not address any issues relating to his request for equitable relief.

*Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Finally, *pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## III. Discussion

In *Bivens*, 403 U.S. 388, 91 S. Ct. 1999, the Supreme Court for the first time implied a right of action for damages against federal officials in the absence of an act of Congress authorizing such an action. In that case, federal narcotics agents entered Bivens' home, handcuffed and arrested him, searched the home "from stem to stern," and threatened to arrest his entire family. The agents also interrogated and strip searched Bivens after taking him to the courthouse. He later sued, alleging that the agents violated his Fourth Amendment right to be free from unreasonable search and seizure. *Id.* at 389, 91 S. Ct. at 2001.

The Court, while observing that the Fourth Amendment did not "in so many words provide for its enforcement by an award of money damages," *id.* at 396, 91 S. Ct. at 2004, found that no special circumstances counseled hesitation in implying a damages action, nor had Congress provided an alternative remedy that it explicitly declared to be a substitute for recovery under the Constitution. *Id.* at 396-97, 91 S. Ct. at 2004-05. The Court further justified implication of a damages action on the basis that Bivens lacked an alternative state remedy to redress the Fourth Amendment

violation. Surveying possible state court remedies, the Court suggested that a trespass action was unlikely to succeed against the agents, who had requested and gained permissive entry into Bivens' home through invocation of federal authority. *Id.* at 394-95, 91 S. Ct. at 2003-04.

The Supreme Court has extended *Bivens* only twice. The first extension occurred in *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979), in which the Court held that a former employee of a United States congressman could maintain a damages action against the congressman for violation of the Due Process Clause of the Fifth Amendment. The Court reasoned that a *Bivens* action was appropriate because the plaintiff lacked any other remedy. *Id.* at 245, 99 S. Ct. at 2277 ("[T]here are available no other alternative forms of judicial relief.").

The Court again extended *Bivens* in *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468 (1980), inferring a damages action against federal prison officials for violating a prisoner's Eighth Amendment right to adequate medical care. Notably, the Court permitted a *Bivens* action in *Carlson* even though the prisoner could have sued the United States for money damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The Court said that in amending the FTCA to create a cause of action against the United States for intentional torts by federal law enforcement officers, 28 U.S.C. § 2680(h), Congress did not explicitly declare that it was to replace, or serve

as the effective equivalent of, an action under *Bivens*. 446 U.S. at 19-20, 100 S. Ct. at 1472. The Court added that *Bivens'* goal of deterring federal officials from violating the Constitution would be better served through an action against the individual officers than it would be through an action under the FTCA against their employer, the United States. *Id.* at 20-21, 100 S. Ct. at 1472-73.

Apart from these two cases, the Court has refused to extend *Bivens*. The Court recently declined to do so in a case very similar to the one before us. In *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515 (2001), the Court refused to infer a damages action against Correctional Services Corporation ("CSC"), a private corporation operating a halfway house under contract with the BOP. There, the plaintiff sued CSC and several of its employees after he suffered a heart attack while climbing a flight of stairs at the order of a CSC employee. The employee ordered the plaintiff to use the stairs, rather than the elevator, even though he was exempt for health reasons from CSC's stair-only policy applicable to inmates residing on lower floors. The individual employees were dismissed on statute of limitation grounds, and the Court noted that "the parties agree that the question whether a *Bivens* action might lie against a private individual is not presented here." *Id.* at 65, 122 S. Ct. at 518. The Court held that the plaintiff could not maintain a *Bivens* action against CSC primarily because the goal of *Bivens* was to deter "*individual federal officers* from committing

7

constitutional violations," *id.* at 70, 122 S. Ct. at 521 (emphasis added), and not to "deter[] the conduct of a policymaking entity . . . ." *Id.* at 71, 122 S. Ct. at 522 (discussing *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996 (1994) (declining to imply a damages action against the FDIC)). Resting on the logic of *Meyer*, the Court held that "inferring a constitutional tort remedy against a private entity like CSC is . . . foreclosed." *Id.* at 71, 122 S. Ct. at 521.

Alba argues that extension of *Bivens* is justified here. First, he argues that the Defendants acted under color of federal law, and therefore, were government actors for purposes of *Bivens* liability. Second, he argues that no meaningful alternative remedies exist, nor does the existence of theoretical alternative remedies foreclose a *Bivens* action.

The Defendants argue that a *Bivens* action is unavailable here because there are adequate state court remedies to which Alba has access. They also argue that their actions are not attributable to the federal government because they are employed by a private company. Finally, they argue that they will be unfairly disadvantaged if *Bivens* were applied to them because they do not enjoy qualified immunity as their federal counterparts do.

Even assuming, without deciding, that Alba's first argument is correct—that CCA is a government actor for purposes of *Bivens* liability—we agree with the

district court that alternative remedies exist by which Alba can recover from the Defendants. In *Malesko*, the Court observed that it has extended *Bivens* only "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." 534 U.S. at 70, 122 S. Ct. at 521.

Alba argues that he does not have an alternative remedy because (1) any alternative remedy must be a federal remedy, and (2) Georgia requires that a professional malpractice complaint include the affidavit of a competent expert setting forth at least one negligent act and the factual basis for each claim, a requirement with which Alba argues an indigent prisoner cannot, as a practical matter, comply.

We can quickly dispose of Alba's first argument. In *Malesko*, the Court said that it has rejected the argument that "a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in *federal court*." 534 U.S. at 69, 122 S. Ct. at 520 (emphasis added). At least one circuit court has acknowledged that the existence of a state remedy precludes recovery under *Bivens*. *See Holly v. Scott*, 434 F.3d 287, 296 (4th Cir. 2006) ("We agree . . . that an inmate in a privately run federal correctional facility does not require a *Bivens* cause of action where state law provides him with an effective remedy."). Finally, the

Supreme Court in *Bivens* itself expressed concern that Bivens could not recover damages against the federal narcotics agents under state tort law.

Also unavailing is Alba's second argument—that recovery under state law is only theoretical because of Georgia's affidavit requirement. It is true that in Georgia a plaintiff must include with a professional malpractice complaint "an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Ga. Code Ann. § 9-11-9.1(a). The flaw in Alba's argument, however, is its presupposition that Alba's complaint states a claim for professional malpractice. Georgia defines "action for medical malpractice" as "any claim for damages resulting from the death of or injury to any person arising out of . . . [h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person . . . ." *Id.* § 9-3-70. Alba's complaint, even if liberally construed, does not state a medical malpractice claim as Georgia defines that cause of action. Instead of challenging the medical care or treatment he received, Alba challenges the medical *policy* established by CCA, a policy he argues is designed to increase CCA's profitability by reducing medical

10

costs. Alba does not allege that any of the Defendants, even the doctors, exercised any professional judgment in denying his request for thyroplasty surgery.

Nor does the Defendants' reason for denying Alba's request for surgery implicate professional decision-making. The Defendants cited CCA policy designating thyroplasty surgery as elective as their justification for refusing to schedule it. *See* R.1-1, May 31, 2005 Gluch Letter ("The surgery, in which you are requesting, is considered elective surgery per the BOP Program Statement 6031.05."); R.1-1, May 18, 2005 Pugh Letter ("In accordance with BOP Program Statement 6031.05, levels of care not provided are designated as care that is medically acceptable but not medically necessary and is for the convenience of the inmate."). In other words, a person wholly lacking medical training and unfamiliar with Alba's medical history could have denied his request for thyroplasty surgery on the same basis that the Defendants did—by consulting BOP Program Statement 6031.05 to conclude that the surgery is considered elective and therefore not covered. Denying Alba's request for surgery on this basis did not implicate the exercise of professional judgment critical to a professional malpractice action. *See Upson County Hosp., Inc. v. Head*, 540 S.E.2d 626, 630 (Ga. Ct. App. 2000) ("Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." (quoting

11

*Mendoza v. Pennington*, 519 S.E.2d 715, 716 (Ga. Ct. App. 1999)) (internal quotation marks omitted)). Because Alba's complaint does not state a claim for professional malpractice, the affidavit requirement would not hinder his attempt to file a state tort lawsuit against the Defendants.[6]

But, even if a Georgia court construed Alba's complaint as stating an action for medical malpractice, the affidavit requirement does not render the state tort remedy inadequate for the purpose of *Bivens* liability. Alba stands in the same shoes as anyone else in Georgia filing a professional malpractice claim and is subject to no stricter rules than the rest of Georgia's residents. Even a free citizen, especially one with limited funds, will have difficulty in obtaining an affidavit from an "expert competent to testify . . . set[ting] forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Furthermore, a prisoner faces inherent challenges in filing any type of lawsuit, especially one that

---

[6]     In his complaint, Alba alleges that CCA policy treats thyroplasty surgery as elective. But, the Defendants' correspondence indicates that it may be the BOP policy that designates the surgery as elective. *See supra* at 12. The record is unclear. In any event, Alba is challenging some entity's corporate policy, which he argues is motivated by profit (rather than professional decision-making by the Defendants). Thus his complaint illustrates another hurdle to extending *Bivens*—he does not challenge the conduct of *individual officers*, but rather, the *policy* established by either CCA or BOP. However, the Supreme Court has made it abundantly clear that *Bivens* will not support an action challenging the conduct or policy of a non-individual defendant. *See Malesko*, 534 U.S. at 71, 122 S. Ct. at 522 ("If deterring the conduct of a policymaking entity was the purpose of *Bivens*, then *Meyer* would have implied a damages remedy against the Federal Deposit Insurance Corporation; it was after all an agency policy that led to *Meyer*'s constitutional deprivation."); *Meyer*, 510 U.S. at 484-86, 114 S. Ct. at 1004-06.

12

involves complicated claims. That state procedural rules complicate the filing of a lawsuit does not mean that a plaintiff lacks "*any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Malesko*, 534 U.S. at 70, 122 S. Ct. at 521. Nor does the difficulty in filing a state action render state relief unavailable in the same vein in which the Supreme Court held it to be unavailable in *Bivens*, where the Court stated that "[t]he interests protected by state laws regulating trespass and the invasion of privacy . . . may be inconsistent or even hostile" to the interests protected by the "Fourth Amendment's guarantee against unreasonable searches and seizures." 403 U.S. at 394, 91 S. Ct. at 2003. Here, Georgia's tort laws are not "inconsistent or even hostile" to the rights protected by the Eighth Amendment.[7]

## IV. Conclusion

Because Alba's complaint fails to state a claim upon which relief can be granted, the district court did not err in dismissing his complaint and action.

AFFIRMED.

---

[7] In fact, as the Defendants point out, Georgia tort law provides remedies arguably superior to recovery under *Bivens*. For example, under Georgia law, Alba can pursue a claim against CCA under a respondeat superior theory of liability, which he could not pursue under *Bivens*. *See Malesko*, 534 U.S. at 70-71, 122 S. Ct. at 521.