[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13925
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00042-MW-CAS

DANIEL R. LONERGAN,

Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 17, 2015)

Before HULL, ROSENBAUM, and COX, Circuit Judges.

PER CURIAM:

The Plaintiff, Daniel R. Lonergan, is a prisoner in the Florida state prison system proceeding pro se. The Plaintiff seeks declaratory and injunctive relief under the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. He does not seek damages. The district court dismissed his complaint. We affirm in part and reverse in part.

When reviewing a dismissal for failure to state a claim, we consider only the facts as alleged in the complaint. Because the Plaintiff proceeds pro se, we construe the allegations liberally. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

According to the First Amended Complaint ("the Complaint"), (D.E. 13), the Plaintiff was referred to a dermatologist for what appeared to be skin cancer. He twice had suspect growths removed, and was diagnosed with actinic keratosis,[1] a type of pre-cancer. The dermatologist ordered that the Plaintiff be provided a large hat, sun block (*i.e.*, sunscreen lotion), and a "no sun pass." Lonergan was ultimately issued a hat and sun block, but was only issued a "no more then [sic] 15 minutes per hour of sun" pass due to prison security concerns. Lonergan requested transfer to a "self-contained" facility—a facility that would not require him to be outside—which the warden denied.

---

[1] The Plaintiff refers to the condition as "acitinic" keratosis. It appears that "actinic" is the more common spelling.

2

The Plaintiff was then transferred to a different prison, where he is currently incarcerated. (This prison, like the first prison, is not a self-contained prison. His transfer to this second prison was for reasons unrelated to his skin condition.) It was then that he noticed the appearance of new growths in the same areas of skin where they had been previously removed. He sought an accommodation under the ADA,[2] which was denied. He also requested a medical evaluation, which was denied as well. At some point after his transfer (the Complaint does not specify exactly when), the Plaintiff's hat pass expired and his "no more than 15 minutes of sun" pass was revoked.

The Plaintiff then utilized the prison's "sick call" procedures in order to receive medical attention. He was given medical attention at the prison, but was not allowed to see his dermatologist.[3] As a result, he was reissued his hat pass and sun block, and was also given long sleeve shirts. He was, however, informed that his sun pass was unauthorized and that the Florida Department of Corrections "does not recognize cancerous skin conditions as a disability."

Due to the layout of the particular prison in which the Plaintiff is incarcerated, he is required to stand in line in the sun in order to do just about anything. The Plaintiff alleges that eating, going to work call, seeking medical

---

[2] The Complaint does not specify exactly what accommodation he sought at the time. However, the Plaintiff now seeks only a transfer to a self-contained facility, as discussed below.

[3] It appears from the Complaint that the Plaintiff's dermatologist is not a prison employee and that visiting the dermatologist requires special permission.

care, going to AA meetings, going to chapel, and receiving visitors all require him to stand in line in the sun.  As a result of the prison's failure to accommodate his skin condition, he often foregoes these activities.  He does this because his dermatologist told him to stay out of the sun.

The Plaintiff alleges violations of the ADA,[4] the Eighth Amendment, the Due Process and Equal Protection Clauses, and the Florida Administrative Code Rule 33-210.201.  The magistrate judge, in a Report and Recommendation ("the R&R"), recommended the sua sponte dismissal of all claims for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).  The Plaintiff filed objections to the R&R in the district court, and the district court adopted the R&R over the Plaintiff's objections.  The Plaintiff appeals.

We review de novo a dismissal for failure to state a claim. *Alba*, 517 F.3d at 1252.  With the exception of Count 1—an ADA claim seeking a reasonable accommodation—we affirm without discussion the district court's dismissal of all other claims for failure to state a claim for the reasons set out in the R&R. (D.E. 15 at 6–11).

In order to establish a prima facie case under the ADA, the Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services,

---

[4] Title II of the ADA applies to inmates in state prisons. *See Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007).

4

programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). An ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the Plaintiff's disability. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

We address the dismissal of Count 1. The court held that Count 1 of the Complaint failed to state a claim under the ADA for four reasons. First, the court held that the Plaintiff sued the wrong party. Second, the court held that the Plaintiff failed to allege a prima facie ADA claim because he did not allege that his impairment substantially limits a major life activity. *See* 42 U.S.C. § 12102. Third, the court held that, as a matter of law, a prisoner is never entitled to a transfer to a different prison as a reasonable accommodation under the ADA. Fourth, the court held that the Plaintiff merely disagreed with the medical treatment provided by his doctors, and that an ADA claim may not be based on disagreement with medical treatment decisions.

In addition to these four holdings, the Defendants offer an alternative basis to affirm: that the Plaintiff failed to allege a prima facie ADA claim because he did not allege that he was excluded or denied participation in programs or activities by reason of his disability. *See id.* § 12132.

5

Turning to the first issue, the court held that the Plaintiff did not sue the proper party.  The Defendants do not present this contention on appeal. Regardless, the Plaintiff has sued the proper party.  He seeks declaratory and injunctive relief against the Secretary of the Florida Department of Prisons[5] and, according to the Complaint, has properly exhausted his administrative remedies. *See Miller v. King*, 384 F.3d 1248, 1264 (11th Cir. 2004), *vacated and superseded on other grounds*, 449 F.3d 1149 (11th Cir. 2006) (applying the *Ex parte young* doctrine and holding that "the Eleventh Amendment does not bar ADA suits under Title II for prospective injunctive relief against state officials in their official capacities.") (citations omitted).[6]

As to the second issue, the court held that the Plaintiff failed to allege a qualifying disability.  Under 42 U.S.C. § 12102(1)(A), a "disability" includes a physical impairment that "substantially limits one or more major life activities." However, the issue in this case is not whether the Plaintiff was substantially limited in a major life activity after the prison attempted to accommodate his condition.  This violates the clear command of 42 U.S.C. § 12102(4)(E)(i), that "[t]he determination of whether an impairment substantially limits a major life

---

[5] The Attorney General of Florida appears to have only been named in the suit to address the Plaintiff's challenge to the constitutionality of a Florida statute.  Count 1 is not asserted against the Attorney General of Florida.

[6] The court's holding, that "[t]he doctrine of respondeat superior or vicarious liability does not provide a basis for recovery under § 1983," (R&R, D.E. 15 at 4), relates to the issue of damages.  The Plaintiff does not seek damages.

activity shall be made without regard to the ameliorative effects of mitigating measures." Rather, at this stage in the litigation, the question is whether the Plaintiff's condition would substantially limit a major life activity without the accommodations provided by the prison.

The Plaintiff successfully alleges that he is substantially limited in a major life activity for three reasons. First, he alleges that he often misses meals because he cannot walk or stand outside, which is required in order to obtain food at the prison. *See* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include . . . eating . . . ."). Second, the statutory list is explicitly non-exhaustive. *See id.* (major life activities "*are not limited to*" the examples listed) (emphasis added). The dermatologist recommended that the Plaintiff stay out of the sun completely, and the court failed to consider whether going outside is a major life activity. Third, "normal cell growth" is a major life activity, *see id.* § 12102(2)(B), and the Plaintiff alleges the abnormal growth of pre-cancerous cells. *See also* 45 C.F.R. § 84.3(j)(2)(i) (defining a physical impairment to include a "condition . . . affecting . . . [the] skin"). Given these three allegations together, and considering the Plaintiff's condition without the benefit of any mitigating measures, we conclude that the Complaint sufficiently alleges that the Plaintiff is substantially limited in at least one major life activity.

Turning to the third issue, the court held that, as a matter of law, a prisoner is never entitled to a transfer to a different prison as a reasonable accommodation under the ADA. In reaching this conclusion, the court relied on a footnote in this court's decision in *Miller v. King*. *See* 384 F.3d at 1266 n.21. In fact, this footnote stands for the opposite proposition. The entire text of this footnote is as follows:

> Nothing in this opinion should be read as creating a "right of transfer" to a particular prison under the ADA. Rather, prison authorities still maintain a great deal of discretion in running their penal institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983) (prisoners have no right to be incarcerated in any particular prison within a state); *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 941–42 (11th Cir. 1987). However, in the context of the ADA, a prisoner's transfer from or to a particular prison may become relevant when prison officials attempt to determine what constitutes a "reasonable" accommodation.

*Id.* While the Plaintiff may have a difficult time ultimately obtaining the relief he seeks, whether the prison's interests outweigh the Plaintiff's is not appropriate for resolution on the pleadings.

As to the fourth issue, the court held that the Plaintiff merely disagreed with the medical treatment provided by his doctors, and that an ADA claim may not be based on disagreement with medical treatment decisions. In fact, according to the Complaint, the Plaintiff's dermatologist ordered him to stay out of the sun, and prison officials decided that the Plaintiff could not be accommodated in this way for security reasons. After this determination was made, the prison's medical

8

personnel—none of whom is a dermatologist—prescribed an alternative remedy: sun block, a hat, and long sleeves. The Plaintiff successfully alleges more than the mere disagreement with his medical treatment. He seeks the treatment recommended by his dermatologist. While the fact-finder may ultimately determine that sun block, a hat, and long sleeves sufficiently accommodate the Plaintiff's condition, the failure of the prison to give the Plaintiff the treatment prescribed by his dermatologist is sufficient for the Plaintiff to plead a prima facie ADA claim.

Finally, we turn to the Defendants' contention that we can affirm on a basis not considered by the district court. According to the Defendants, the Plaintiff failed to allege a prima facie ADA claim because he did not allege that he was excluded or denied participation in programs or activities by reason of his disability. *See* 42 U.S.C. § 12132. In short, the Defendants contend that it is the Plaintiff's decision not to go outside—and not his disability—that exclude him from the prison's programs and activities. According to the Complaint, the Plaintiff's dermatologist diagnosed him with a pre-cancerous skin condition and ordered him to stay out of the sun. It is certainly true that the Plaintiff could ignore his diagnosis and go outside in the sun anyway. However, we decline the Defendants' invitation to hold that his failure to do so precludes him from pleading a prima facie ADA claim.

For the foregoing reasons, the judgment of the district court is reversed as to the Plaintiff's Count 1 ADA claim against the Florida Department of Corrections and the Secretary of the Florida Department of Corrections.  The judgment is affirmed in all other respects.  We remand for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.