**Adrian Francis WILLIAMS,**
**Plaintiff-Appellant,**

v.

**DEPARTMENT OF CORRECTIONS,**
**Secretary, Department of Corrections,**
**Secretary, Florida Department of Corrections, Chris K. Southland, Florida Department of Corrections Regional Director, Vivian Stalworth, Florida Department of Corrections Classification Specialist, et al., Defendants-Appellees.**

**No. 15-14141**
**Non-Argument Calendar**

United States Court of Appeals,
Eleventh Circuit.

Filed (February 1, 2017)

878

Wakulla CI Warden, Wakulla CI—Inmate Trust Fund, Crawfordville, FL, for Plaintiff-Appellant

Adrian Francis Williams, Pro Se

Holly Noel Simcox, Attorney General's Office, Tallahassee, FL, for Defendants-Appellees Department of Corrections, Secretary, Department of Corrections, Secretary, Florida Department of Corrections, Vivian Stalworth

Shirley Wilson Durham, Pam Bondi, Attorney General's Office, Tallahassee, FL, for Defendant-Appellee Chris K. Southland

Before ED CARNES, Chief Judge, MARCUS, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Adrian Williams, a Florida prisoner, brought claims under 42 U.S.C. § 1983 against nine employees of the Florida Department of Corrections. The district court dismissed Williams' sixth amended complaint and Williams, proceeding pro se, appeals that dismissal.

## I.

Because we are reviewing the district court's dismissal of Williams' claims, we accept the allegations in his sixth amended complaint as true for present purposes only. See Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). All of the statements that follow in this part are based on Williams' allegations, not factfindings.

In May 2011, while he was incarcerated at Jackson Correctional Institution, three Latin King gang members placed a knife to his back and told him they would have killed him if witnesses were not around. After reporting that incident, Williams was placed in protective management and in July 2011 was transferred to another facility until November. From November 2011 until January 2013, Williams was out of the Department of Corrections' custody.[1] On January 25, 2013, he was "ordered back to [the Department of Corrections'] custody," and he was transported back to the Jackson Correctional Institution. Upon his return he told Sergeant Bryant Southwell that he had previously been transferred away from that facility because of his problems with gang members there. Southwell spoke to Assistant Warden Ricky Cloud, who stated that if Williams did not want to be housed in the Jackson facility, Southwell should "lock him up and spray him for disobeying a verbal order."

While Williams was at the Jackson prison, gang members threatened him because he had reported the 2011 altercation with the Latin King gang members. On January 26, 2013, several gang members approached him in the recreational yard and threatened to "get him later" for reporting the 2011 incident. Williams reported that threat to Captain E. Jones, who responded that there was "no way" Williams had been transferred to another facility to resolve an issue with gang members. Jones told him to return to his dorm before he was locked up and sprayed for lying to staff.

About a week later, Southwell moved Hector Campos, one of the gang members who had threatened Williams in the recreational yard, into Williams' dormitory. Williams complained to Assistant Wardens John Barfield and Cloud, but they didn't believe him, explaining that the "classification board [would not] make any such errors." On February 15, 2013, Williams awoke to Campos cutting him with a razor blade on his face. Williams alerted Officer Shawn Smith, and Williams was treated by the prison's medical staff. One week later, on February 22, 2013, Jones and Cloud sprayed chemical agents six times into William's cell because of Williams' requests to transfer to another facility, and because they had heard he was planning to file a lawsuit against them.

## II.

Williams brought § 1983 claims against nine Department of Corrections employees: Warden Randall Bryant; Assistant Wardens John Barfield and Ricky Cloud; Captain E. Jones; Sergeant Bryant Southwell; Officer Shawn Smith; and Robert Gould, Heath Holland, and Chris South-

---

1. It is unclear whose custody Williams was in during that time. He says that he "stayed in court in Jacksonville, Florida" from November 2011 to January 2013 "to handle a court issue."

land, three officials involved with the classification system at Jackson Correctional Institution. Williams alleged that Gould failed to check his Department of Corrections' file before transferring him back to the Jackson facility, and that Holland and Southland failed to ensure the prison's classification system operated safely. He alleged that the remaining defendants failed to protect him, and that Jones and Cloud retaliated against him with chemical agents.

A magistrate judge issued a report recommending dismissal of Williams' sixth amended complaint for failure to state a claim for relief against Gould and Southland, and for failure to exhaust administrative remedies as to the remaining defendants. Three days later, Williams filed a motion for willful default, contending that five of the defendants failed to defend against his complaint. He also filed objections to the report and recommendation. The district court overruled Williams' objections, adopted the report and recommendation, denied Williams' motion for willful default, and dismissed the complaint.

### III.

Williams contends that the district court erred (1) in dismissing his claims, pursuant to 42 U.S.C. § 1997e(a), against seven defendants for failure to exhaust administrative remedies, and (2) in dismissing his claims, pursuant to 28 U.S.C. § 1915(e), against the two remaining defendants for failure to state a claim for relief. Williams also contends that the court erred in denying his motion for willful default against five of the defendants.

### A.

We first address whether Williams exhausted his administrative remedies. "We review de novo a district court's interpre-

tation and application of 42 U.S.C. § 1997e(a)'s exhaustion requirement." Bingham v. Thomas, 654 F.3d 1171, 1174 (11th Cir. 2011).

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922, 166 L.Ed.2d 798 (2007) (quotation marks omitted). Because Williams is a Florida prisoner, he must complete the Florida Inmate Grievance Procedure, which requires (1) an informal grievance to the staff member responsible for the particular area of the problem, (2) a formal grievance with the warden, assistant warden, or deputy warden, and (3) an appeal to the Office of the Secretary of the Florida Department of Corrections. Fla. Admin. Code §§ 33–103.005(1), 33–103.006(1), 33–103.007(1). Defendants bear the burden of proving that the prisoner failed to exhaust his administrative remedies. See Bryant v. Rich, 530 F.3d 1368, 1379 (11th Cir. 2008).

While the district court concluded that Williams exhausted his administrative remedies only as to Gould and Southland, we conclude that he also exhausted administrative remedies as to Holland. Williams has alleged in this lawsuit that defendants Gould, Holland, and Southland placed him in danger by improperly classifying him and transferring him back to Jackson Correctional Institution. The informal grievance Williams filed on March 10, 2013, concerned that improper classification and

transfer. In that grievance Williams stated that he should not have been transferred back to Jackson Correctional Institution, that he had received threats from Latin King members, and that he had been cut in the face by one of the gang members from his dorm. He claimed that his life was in danger and asked to be transferred to another facility.

Williams' March 10 grievance was responded to and returned to him on March 19, 2013, stating: "You have been approved to transfer." Because that informal grievance was addressed and approved, Williams was not required to submit any further grievances about the classification system or his improper transfer to the Jackson prison. As a result, he exhausted his administrative remedies on those issues and was entitled to pursue a cause of action based on them. See 42 U.S.C. § 1997e(a).

■ Williams did not exhaust his administrative remedies for his claims against the remaining six defendants. Florida's grievance procedure requires prisoners to file informal grievances—the first step of the administrative remedies process—within twenty days of the date of the alleged incident. Fla. Admin. Code § 33–103.011(1)(a). His claims against defendants Barfield, Bryant, Cloud, Jones, Smith, and Southwell involve conduct that occurred after his return to Jackson Correctional Institution on January 25, 2013, culminating with the assault by Campos on February 15, 2013. And his retaliation claims against defendants Jones and Cloud arose from the February 22, 2013 incident involving chemical agents. That means Williams had until March 7, 2013, to file an informal grievance about the February 15 incident with Campos, and until March 14, 2013, to file an informal grievance about the February 22 incident involving chemical agents.

Williams failed to do so. He filed an "inmate request" on February 15, 2013, stating that he had been threatened by Latin King members and that he thought Campos "had something to do with [him] being cut in the face." But that document cannot be considered an informal grievance because he did not check the box designating it as an informal grievance. Fla. Admin. Code § 33–103.005(2)(b) ("On the line reading 'Request,' the inmate shall check the box to indicate that Form DC6-236 is being used as an 'Informal Grievance.' Failure to do this will cause the request to be handled routinely and it will not be considered an informal grievance.") (emphases added). He also failed to "[c]heck the appropriate box indicating to whom he [was] submitting the informal grievance." Id. § 33–103.005(2)(a). Because he did not properly submit any informal grievances concerning those events, Williams did not exhaust his administrative remedies for his claims that the six defendants failed to protect him from another inmate and that two defendants sprayed his cell with chemical agents.

Even if Williams had filed informal and formal grievances, the Florida Department of Corrections' grievance log confirms that he did not submit any grievance appeals about the defendants' failure to protect him or their spraying his cell with chemical agents. An employee of the Bureau of Inmate Grievance Appeals attested that, from January 1, 2013, through April 30, 2013, Williams "filed no appeals regarding being afraid of Latin King [g]ang members." The defendants' evidence also showed that, during those four months, Williams only filed one appeal concerning the conditions of his confinement, and that appeal involved property that Williams was ordered to leave at a different facility. It had nothing to do with any of the issues underlying any of Williams' § 1983 claims.

Because Williams did not alert defendants Barfield, Bryant, Cloud, Jones, Smith, and Southwell through the grievance process about the substance of his claims, those defendants did not have an opportunity to redress the alleged offenses. See Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) (stating that the purpose of the exhaustion requirement is to give "corrections officials an opportunity to redress grievances before a lawsuit is initiated, thereby reducing the amount of inmate litigation that is filed"). As a result, Williams is barred from bringing § 1983 claims based on those facts. See 42 U.S.C. § 1997e(a). The district court properly dismissed his claims against those six defendants.

### B.

Williams contends that the district court erred by dismissing his claims against defendants Gould and Southland for failure to state a claim. Because the district court erred in dismissing his claim against Holland for failure to exhaust, we will also address whether Williams stated a claim against Holland, as "we may affirm the district court's judgment on any ground that finds support in the record." See Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012) (quotation marks omitted).

We review de novo a district court's dismissal under 28 U.S.C. § 1915(e). Alba, 517 F.3d at 1252. The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) also applies to dismissals under § 1915(e). Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation marks omitted). "[P]ro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." Alba, 517 F.3d at 1252.

"The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the "objective component," a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. Under the "subjective component," the prisoner must allege that the prison official, at a minimum, acted with deliberate indifference. Id. Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than negligence. See Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Williams' sixth amended complaint failed to state a claim against Gould, Holland, and Southland because he did not allege that those defendants acted with deliberate indifference. Williams alleged that Gould failed to check his Department of Corrections' file before having him returned to Jackson Correctional Institution. He alleged that Holland failed to provide a safe classification system at that prison. And he alleged that Southland failed to ensure that the Department of Corrections classification board was in compliance with safety procedures.

Accepting those allegations at true, they may demonstrate that Gould, Holland, and Southland acted negligently, but they do not show that those defendants acted with a "sufficiently culpable state of mind" because Williams never alleged that they knew of yet disregarded a risk of serious harm to him. See Chandler, 379 F.3d at

1289; see also Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (noting that the deliberate indifference standard "is far more onerous" than the negligence standard). In other words, Gould, Holland, and Southland may have placed Williams in danger by failing to take certain actions related to his transfer, but they did not know that they were potentially placing him in serious danger. Because Williams failed to allege facts showing that those defendants knew of and disregarded a risk of serious harm to him by conduct that is more than negligence, Williams' claims against them fail to state a claim. See Farrow, 320 F.3d at 1245.

## IV.

Williams also challenges the district court's denial of his motion for willful default. He contends that only four of the nine defendants responded to his complaint, and as a result, the other five defendants "are in default."

We review for abuse of discretion a district court's denial of a motion for a default judgment. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316 (11th Cir. 2002). Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

The five defendants whom Williams argues failed to respond to his complaint jointly filed the motion to dismiss, along with the other defendants. Those five defendants also jointly filed the notice of filing a supplemental exhibit in support of their motion to dismiss. Because those defendants did not "fail[ ] to ... defend," Fed. R. Civ. P. 55(a), the district court did not abuse its discretion in denying Williams' motion.

**AFFIRMED.**