**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12771

Non-Argument Calendar

————————————————

JAMES TAYLOR,

*Plaintiff-Appellant,*

*versus*

FREEDOM MORTGAGE CORPORATION,

MCCALLA RAYMER LEIBERT PIERCE, LLC,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court

for the Southern District of Georgia

D.C. Docket No. 1:24-cv-00054-JRH-BKE

————————————————

Before LUCK, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

James Taylor sued Freedom Mortgage Corporation and law firm McCalla Raymer Leibert Pierce, LLC in federal court under

the Fair Debt Collection Practices Act.  In Taylor's complaint, he alleged that loan servicer Freedom Mortgage and its agent McCalla violated the Act by engaging in false, deceptive, and misleading conduct when they initiated nonjudicial foreclosure proceedings on a defaulted mortgage loan to which Taylor became successor in interest after the 2020 death of his mother, the original mortgagor. After screening the complaint, a magistrate judge recommended dismissal for failure to state a claim under the Act and concluded that amendment would be futile.  After de novo review, the district court adopted the magistrate judge's recommendation and dismissed the complaint without granting leave to amend.  Because we agree with the district court that Taylor failed to state a claim under the Act and that leave to amend would have been futile, we affirm.

## FACTUAL BACKGROUND

We assume as true the following allegations in Taylor's complaint.  In 2007, Taylor's mother took out a mortgage for a property on Ashley Drive in Augusta, Georgia.  In June 2020, she applied to Freedom Mortgage to refinance the mortgage for $72,298 of closed-end credit, which included a finance charge of $32,369.57 and attached a security interest to the property for 25 years.  The refinanced mortgage became effective on July 1, 2020.

After Taylor's mother died in August 2020, Taylor and his sister became successors in interest to the mortgage loan.  In November 2021, Taylor mailed a letter to Freedom Mortgage requesting loan information and documentation.  Freedom Mortgage

replied in a letter dated December 8, 2021, confirming the loan had been refinanced in July 2020, attaching loan documents and payment history, and explaining that Freedom Mortgage was the servicer of the loan "with rights to enforce the terms of the security instruments and collect on the debt" and that "the owner of th[e] loan [wa]s [the Government National Mortgage Association]."

In January 2022, Taylor mailed Freedom Mortgage another letter asking to validate the debt. Freedom Mortgage replied in a letter dated February 15, 2022, explaining the loan originated on July 1, 2020, the account reflected that Taylor and his sister were successors in interest as of October 1, 2020, that the loan qualified for forbearance through March 31, 2022, and that five monthly payments were overdue totaling $2,932.75.

In July 2022, Taylor filed a request with the Consumer Financial Protection Bureau, seeking "the audit trail" including "the file, accounting, ledger and transactional history" from Freedom Mortgage. According to Taylor, Freedom Mortgage failed to provide the file, accounting, ledger, and transactional history per his July request via the Bureau.

On September 14, 2022, Taylor emailed Freedom Mortgage asking to validate the debt on the loan once again. Freedom Mortgage responded in a letter dated September 21, 2022, stating that it had attached the note, security deed, verification of mortgage, and payment history as required by the Act.

On December 7, 2022, the law firm McCalla, representing Freedom Mortgage, sent informational correspondence addressed

to Taylor's then-deceased mother stating, "[McCalla] may be deemed a debt collector. You have a real estate loan serviced by Freedom Mortgage . . . We may use any information you give us to help collect the debt[.]" The informational correspondence also said, "nothing stated herein is an attempt to collect, recover, or off-set the mortgage debt against you personally" and that the correspondence was being provided "for informational purposes only."

On July 25, 2023, McCalla sent a notification letter, again addressed to Taylor's mother, with the subject: "Notice of Nonjudicial Foreclosure Sale." Written in bold at the top of the notification letter were the words: "BE ADVISED THAT UNDER FEDERAL LAW, THIS LAW FIRM MAY BE DEEMED A DEBT COLLECTOR. ANY INFORMATION OBTAINED MAY BE USED FOR THE PURPOSE OF COLLECTING A DEBT." The notification letter explained that the borrower was in default on the loan, that the entire amount of the outstanding principal and interest was due, that McCalla had been retained to initiate nonjudicial foreclosure proceedings on the mortgage under Georgia law, that the borrower could contact Freedom Mortgage to discuss "what loss mitigation options might be available," and that the borrower could contact McCalla "[f]or further information regarding this foreclosure sale, or [] to request reinstatement or payoff figures from [the] lender as permitted." The letter also said that under Georgia law, the borrower had ten days from the receipt of the letter to pay the entire amount owed and that a nonjudicial foreclosure sale was scheduled for September 5, 2023, at the Richmond County Courthouse. Attached to the letter was a notice of sale—

which was also published in the local county newspaper—that listed Taylor's mother as the borrower and Freedom Mortgage as the lender, noted the amount due as $72,298.00, described the loan as in default, and left out any mention of the Government National Mortgage Association.

## PROCEDURAL HISTORY

On April 26, 2024, Taylor filed a complaint naming Freedom Mortgage and McCalla as defendants. Though not a model of clarity, from what we can tell, Taylor's complaint contained four counts. In count one, Taylor alleged that the notice of sale Freedom Mortgage sent through its agent McCalla contained false, deceptive, and misleading representations likely to lead to confusion and misunderstanding and "was harassing, oppressive [and] abusive" because it listed his mother as the borrower; stated the wrong amount for the mortgage; listed Freedom Mortgage as the lender instead of the Association; and described the loan as in default, all in violation of 15 U.S.C. sections 1692d and 1692e. In count two, Taylor alleged that McCalla's December 7, 2022 correspondence, which it sent on Freedom Mortgage's behalf, had failed to disclose it was a debt collector, had failed to reference the Act, and had made false, deceptive, or misleading representations that "ran the risk of confusion, misunderstanding and repayment" in violation of section 1692e. In count three, Taylor alleged that McCalla's July 23, 2023 notification letter sent on behalf of Freedom Mortgage had "offered to discuss 'foreclosure alternatives' reinstatement or payoff figures, which is a false, deceptive or misleading representation, [and] risked confusion, misunderstanding and

repayment," in violation of section 1692e.  In count four, Taylor alleged that the notification letter and notice of sale sent by McCalla on Freedom Mortgage's behalf constituted an "unfair practice that invade[d] privacy and risked repayment" of the loan since the Association was the rightful creditor and lender and because neither defendant "had any lawful interest, equity or claim to the security interest, mortgaged property and dwelling[,]" which violated section 1692f(6).

As exhibits, Taylor attached:  (1) a loan application dated July 1, 2020 and signed by his mother for the refinanced mortgage in the amount of $72,298 that listed Freedom Mortgage as the lender; (2) the December 8, 2021 letter from Freedom Mortgage; (3) the February 15, 2022 letter from Freedom Mortgage; (4) the September 21, 2022 letter from Freedom Mortgage responding to Taylor's request to validate the debt and providing copies of the note and security deed; (5) the December 7, 2022 correspondence from McCalla addressed to Taylor's mother stating that McCalla may be deemed a debt collector, noting that Freedom Mortgage was the loan servicer, and stating that the total owed amount was $70,441.15; (6) the notice of sale dated July 25, 2023; and (7) the notice of sale under power stating that Freedom Mortgage was the holder of the security deed for the property.

As relief, Taylor requested $600,000 in actual damages for the total loss of the property; $600,000,000 in punitive damages; improvements to the property and restoration of title and the deed of trust; a refund of $72,298 for the "closed-end credit" that

Freedom Mortgage received on July 1, 2020 to refinance the mortgage; and $9,000 for the nine alleged violations of the Act.

On the same day he filed the complaint, Taylor also moved to proceed in forma pauperis, which the magistrate judge granted. After screening the complaint, the magistrate judge recommended dismissal for failure to state a claim. The magistrate judge first determined that Taylor had not sufficiently alleged that either defendant qualified as a "debt collector" under the Act's primary definition in section 1692a(6), meaning Taylor had failed to state a claim in counts one through three. Next, after acknowledging that the defendants might still qualify as debt collectors under section 1692f(6)'s expanded section-specific definition, the magistrate judge nonetheless concluded that Taylor had failed to state a claim in count four because he hadn't satisfied any of section 1692f(6)'s three triggering conditions. On this point, the magistrate judge emphasized that the complaint's exhibits confirmed that Freedom Mortgage had a valid and enforceable security interest in the mortgage and that McCalla had been retained by Freedom Mortgage as loan servicer for the sole purpose of conducting nonjudicial foreclosure proceedings on Freedom Mortgage's behalf. Finally, the magistrate judge determined that granting Taylor leave to amend would have been futile because more specific allegations wouldn't cure his complaint's deficiencies, pointing out that Taylor had already tried and failed to sue the same defendants multiple times under the Act for similar allegations.

Taylor filed objections, and after reviewing the magistrate judge's recommendation de novo, the district court adopted it in full and dismissed the complaint.  Taylor appeals the dismissal.

## STANDARD OF REVIEW

We review de novo a district court's sua sponte dismissal for failure to state a claim under 28 U.S.C. section 1915(e)(2)(B)(ii), using the same standards that govern dismissals under Federal Rule of Civil Procedure 12(b)(6).  *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).  To prevent dismissal under rule 12(b)(6), a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference."  *Gill v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019).  "[Federal Rule of Civil Procedure 10(c)], provide[s] that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss."  *Id.* (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).  Pro se pleadings are held to a less stringent standard than pleadings drafted by lawyers and will be liberally construed.  *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).  But we may not "serve as de facto counsel for a

party [or] rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69.

## DISCUSSION

### *The claims under sections 1692d and 1692e*

Taylor first challenges the district court's dismissal of count one for failure to state a claim under sections 1692d and 1692e as well as its dismissal of counts two and three for failure to state a claim under section 1692e. Among other things, the Act prohibits debt collectors from (1) "harass[ing], oppress[ing], or abus[ing] any person in connection with the collection of a debt[,]" 15 U.S.C. § 1692d; and (2) "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" *id.* § 1692e. To state a claim for a violation of section 1692d or section 1692e, a plaintiff must first allege the defendant is a debt collector as defined under the Act's primary definition in section 1692a(6). *See Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 473–77 (2019) (emphasis added); *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) ("[I]n order to state a plausible [] claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection.").

Under the Act's primary definition, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another." 15 U.S.C. § 1692a(6). The primary definition applies broadly across the Act's provisions with the exception of section 1692f(6), which has its own section-specific definition that's broader than the primary one. *See Obduskey*, 586 U.S. at 474–77.

Section 1692a(6)(F)(iii), however, excludes from the Act's primary definition any person who is collecting or attempting to collect on any debt owed or due to another if the debt was not in default at the time it was acquired. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015); *see also* 15 U.S.C. § 1692a(6)(F)(iii). In *Davidson*, we said that entities falling within this exclusion include "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing." 797 F.3d at 1314 & n.4 (quotation marks omitted). And in *Obduskey*, the Supreme Court held that a person or entity that only engages in nonjudicial foreclosure is not a debt collector under the Act's primary definition. *See* 586 U.S. at 477. *Obduskey* also made clear that incidental notice mandated by state law concerning a debtor's need to pay outstanding debts to avoid foreclosure is insufficient, in the absence of any abusive debt-collection practices, to qualify a person or entity as a debt collector under the Act's primary definition. *See id.* at 480–81.

Taylor concedes that Georgia law is the relevant state law governing the nonjudicial foreclosure here. Before starting nonjudicial foreclosure proceedings, Georgia law mandates that:

> [n]otice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other

> lien contract shall be given to the debtor . . . . shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail . . . .

Ga. Code Ann. § 44-14-162.2.

Finally, we've held that the Act's statutory definition is what determines whether a party qualifies as a debt collector, even when a party may have self-identified as one. *See Reese*, 678 F.3d at 1214–19 (analyzing whether defendant was a debt collector under the Act even though defendant had stated in a letter that it was).

As best as we can tell from his opening brief, Taylor argues that the district court erred in concluding that his complaint failed to allege that either defendant was a debt collector under the Act's primary definition and accordingly erred when it dismissed counts one through three based on that error. We disagree.

The complaint's allegations and exhibits confirm that neither defendant was a debt collector under the Act's primary definition. As for Freedom Mortgage, Taylor affirmatively alleged that Freedom Mortgage was the loan servicer of the refinanced mortgage loan and failed to allege that Freedom Mortgage acquired the mortgage after it was already in default. The documents Taylor attached to the complaint further confirm that Freedom Mortgage began servicing the mortgage when it was issued and before any default. *See Gill*, 941 F.3d at 511; Fed. R. Civ. P. 10(c). Because

Taylor alleged that Freedom Mortgage was servicing an outstanding debt that was not in default at the time Freedom Mortgage acquired it, Freedom Mortgage doesn't fall under the Act's primary definition of a debt collector. *Davidson*, 797 F.3d at 1314 & n.4; 15 U.S.C. § 1692a(6)(F)(iii).

The complaint's allegations and attachments also confirm that McCalla doesn't qualify as a debt collector under the Act's primary definition. Although it's true that the complaint's allegations suggest that McCalla was retained after the debt was already in default, *Obduskey* was clear that a law firm like McCalla that's only engaged in nonjudicial foreclosure isn't a debt collector under the Act's primary definition. *See* 586 U.S. at 477. Since that's exactly what McCalla was doing here on behalf of Freedom Mortgage, McCalla doesn't qualify as a debt collector under the Act's primary definition either.

Resisting this conclusion, Taylor points to the language in the notification letter he received from McCalla discussing foreclosure alternatives, apparently in support of his claim that McCalla engaged in conduct that sections 1692d and 1692e proscribe. But Georgia law required McCalla to send notice saying exactly that. *See* Ga. Code Ann. § 44-14-162.2 (requiring notice of the initiation of nonjudicial foreclosures to be mailed in writing that includes the name, address, and telephone number of the individual or entity with authority to negotiate, amend, and modify the mortgage). And as *Obduskey* also made clear, without any indication of other abusive debt collection practices that the Act prohibits, incidental

notice mandated by state law about a debtor's need to pay outstanding debts to avoid foreclosure is not sufficient to qualify a law firm as a debt collector under the Act's primary definition. *See* 586 U.S. at 480–81. So Taylor's counterargument fails.

In sum, because Taylor did not adequately allege that either defendant was a debt collector within the primary definition of the Act, his claims under sections 1692d and 1692e must fail as to both defendants. Counts one through three were therefore properly dismissed.

*The claims under section 1692f(6)*

Taylor next challenges the district court's dismissal of count four for failure to state a claim under section 1692f(6) of the Act. Under section 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Relevant here, section 1692f(6) makes it a violation of the Act to "[t]ak[e] or threaten[ to] take any nonjudicial action" to dispossess property (*e.g.*, foreclosing or threatening to foreclose) when "(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." *Id.* § 1692f(6).

As noted above, section 1692a(6) includes a broader definition of debt collector that's specific to section 1692f(6). *See id.* § 1692a(6). This section-specific definition for debt collector "also includes any person who uses any instrumentality of interstate

commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* § 1692a(6).

Taylor appears to argue that he sufficiently alleged that the communications McCalla sent him on Freedom Mortgage's behalf about the initiation of nonjudicial foreclosure proceedings satisfy section 1692(f)(6)(A) because the defendants "had no interest, no equity, no claim and all instruments bearing such claims are fraudulent and void, [since] they are not holders in due course of the original note." But even assuming the defendants qualify as debt collectors under 1692f(6)'s broader definition, *see id.* § 1692a(6), Taylor has still failed to allege any of the three triggering conditions required to state a claim for a violation of section 1692f(6). *See id.* § 1692a(6)(A)–(C).

To start, Taylor didn't allege in his complaint or argue on appeal that either section 1692f(6)(B) or (C) were satisfied, so we only need to address whether the allegations satisfy section 1692f(6)(A). And they don't. In fact, the loan documents Taylor attached to his own complaint confirm that Freedom Mortgage, as loan servicer for the refinanced mortgage, *did* have the authority to enforce the terms of the mortgage, including the right to possess the property claimed as collateral through the enforcement of that security interest. *See id.* § 1692f(6)(A). And that's exactly what Freedom Mortgage did by retaining McCalla to initiate nonjudicial foreclosure proceedings after the default. Contrary to Taylor's suggestion, section 1692f(6)(A) doesn't say the condition is satisfied when a debt collector who isn't the original holder of the note

initiates foreclosure proceedings. That means Taylor's allegations don't satisfy section 1692f(6)(A).

In sum, because Taylor's own attachments confirm that Freedom Mortgage had a "present right to possession of the property claimed as collateral through an enforceable security interest," *id.*, and he didn't try to allege that section 1692f(6)(B) or (C) were satisfied, the district court correctly determined that Taylor failed to state a claim for a violation of section 1692f(6) in count four.

*The district court's futility determination*

Finally, we address the district court's determination that granting him leave to amend the complaint was futile. Generally, a plaintiff proceeding pro se must receive at least one opportunity to amend the complaint if he might be able to state a claim by doing so. *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). As we've said, while "leave to amend should be freely given when justice so requires" it is "not an automatic right." *Hall v. Merola*, 67 F.4th 1282, 1297 (11th Cir. 2023) (quotation marks omitted). And the district court doesn't have to allow amendment at all when doing so would be futile. *Woldeab*, 885 F.3d at 1291–92. "The futility issue is concerned less with whether [the plaintiff] *has* otherwise stated a claim against the [defendant] than with whether, when all is said and done, he *can* do so." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

We find no error by the district court in declining to grant Taylor leave to amend the complaint. For one thing, Taylor failed to "plainly and prominently raise" on appeal any challenge to the

district court's futility determination. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). That means he's forfeited the ability to challenge that determination on appeal. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

But even if Taylor had properly raised the issue, the district court's futility determination was still correct. The complaint's allegations provide no indication that Taylor could have stated a claim under the Act had he been granted leave to amend. *See Silberman*, 927 F.3d at 1133; *Woldeab*, 885 F.3d at 1291–92. This is particularly true where, as here, a plaintiff has already filed several complaints against the same defendants based on the same allegations, all of which were dismissed without prejudice.

In sum, Taylor forfeited any challenge to the district court's sua sponte dismissal of the complaint without granting him leave to amend, but even if he hadn't, the district court didn't err in determining that leave to amend would have been futile.

## CONCLUSION

Taylor failed to allege that either defendant qualified as a debt collector under the Act's primary definition in section 1692a(6), so the district court properly dismissed counts one through three for failure to state a claim. As for count four, Taylor failed to allege any of the three triggering conditions required to state a claim under section 1692f(6), so the district court properly dismissed that count as well.

**AFFIRMED.**